ROSALYN CAVE NASH, Respondent, *v.* JAMES HARLEY NASH, Appellant.

First Department, July 1, 1932.

*J. Harlin O'Connell*, for the appellant.

*Maxwell H. Goldstein*, for the respondent.

PER CURIAM. The physical condition of the child, as testified to by the physicians, clearly warrants the conclusion that she should reside in the State of California, or in a State having a similar climate. There appears to be no question that the interest of all parties will be best served by permitting the child to reside with her mother in California.

When the mother and her little daughter lived in·New York

the father was not sufficiently interested in the welfare of his child to visit her when she was sick. This sudden interest has arisen only since it was decided that because of her health she should reside in the State of California.

The reason heretofore stated being sufficient, it is unnecessary to avert to the divorce and surrounding facts leading to same, to show that the interests of the child will be best served by a compliance with the judgment of the Special Term.

The judgment so far as appealed from should be affirmed, with costs.

Present — McAvoy, Merrell, Martin and O'Malley, JJ.; O'Malley, J., dissents and votes for reversal.

O'Malley, J. (dissenting). I am unable to concur in an affirmance as I am firmly of the opinion that there was an abuse of discretion at Special Term. That part of the interlocutory judgment appealed from authorizes the mother, the plaintiff herein, to whom has been awarded custody of the child of the parties, to take the child to the State of California to live " until the child shall pass her growing period; " that the defendant be permitted to visit the said child at her place or places of residence at all reasonable times, and that plaintiff shall bring back the child " to the State of New York for two weeks between July 1st and September 15th of each year " at the request of the defendant, who " shall advance to the plaintiff the necessary railroad expenses for each of such trips."

Plaintiff's action for divorce was undefended, but during its pendency an agreement between the parties with respect to alimony and counsel fees was made. This provides that the plaintiff shall have permanently the exclusive custody and control of the child of the parties, but that the defendant shall have the right of visitation " in the City of New York at least once a week unless unusual circumstances arise in which event such visits may be suspended for a reasonable period of time." The defendant agreed to pay $5,000 a year to the plaintiff for the support of herself and the child, subject to an application for reduction or an increase in the event that defendant's income should be less than $12,000 or more than $15,000, respectively. The agreement also provided for counsel fee and expenses.

On the trial before the official referee application was made to modify the agreement so as " to permit the plaintiff to reside with the infant, Betty Lee Nash, in the State of California." This application was based on the claim that the child's health required

her residence in California during her growing years. The application was denied by the learned referee, who refused to find that it was for the best interest, health and welfare of the child to live in California, and directed that, in view of the agreement between the parties, the application be made to Special Term. The application as thus suggested followed, and resulted in the interlocutory decree appealed from.

It is to be observed that under the agreement between the parties it was contemplated that the child would remain in New York city and that the defendant should have the right to see his child each week except in " unusual circumstances." The interlocutory decree wholly deprives him of the right of weekly visits and imposes upon him an additional financial burden of defraying the expenses of the plaintiff and child from California to New York and return once each year. However, the child is to be kept here but two weeks. This is the only opportunity which the defendant will have to see his child during " her growing period " unless he himself makes frequent trips to the State of California.

I agree that the welfare of the child is entitled to paramount consideration. Assuming this, the question presented is how will such welfare best be served. The courts of this State have repeatedly recognized a divorced husband's right of visitation with respect to his children and this notwithstanding the decree of divorce was predicated upon his wrongdoing.

In *Ahrenfeldt* v. *Ahrenfeldt* (4 Sandf. Ch. 493), where an application was made by a defendant husband to amend a decree of limited divorce so as to give him greater rights with respect to the custody of his infant daughter, it was said: " The decree in the cause establishes that the present unhappy situation of this family is the fault of the husband. It is, therefore, not an undue punishment to him that his fault should deprive him of the custody of his daughter; while it would be cruel to the unoffending wife to add to her misfortune the deprivation of the society of her only child.

"At the same time the future welfare and happiness of the child is entitled to the highest regard, if not to paramount consideration. Her worldly prospects in life are mainly dependent upon her father, and it is not to be disguised that there is great danger from the existing state of things that his natural love and regard for her may by degrees become weakened, and be followed by alienation and estrangement.

" The daughter is now of a suitable age to be placed at a boarding school, under the especial charge of some lady of character; and while I cannot assent to any plan which will deprive her mother of her care, or of her society, so far as is compatible with her position

in a school, yet I am persuaded that a scheme may be framed upon that position which will enable her father to visit her with more freedom and with more advantage to her cherishing due respect and affection for him than can be afforded in her present situation.

"I will, therefore, direct a reference * * * to a master * * * to settle the manner in which the defendant shall be permitted to visit her and enjoy her society " (pp. 494, 495).

Similarly in *Ullman* v. *Ullman* (151 App. Div. 419) the court expresses itself as follows: "The child at tender age is entitled to have such care, love and discipline as only a good and devoted mother can usually give. This should continue from intimate association until the infancy grows into something like boyhood, and while perhaps the exact limit cannot be stated, yet it will be when the infantile state has been passed. Meanwhile the father must not be excluded from a full opportunity to have such possession of his child as will enable him to impart to it what from the father enters into the child's character, and to indulge the affection that a father feels and bestows, whereby the boy may grow up in knowledge and love of him " (pp. 424, 425).

The underlying principle of these decisions and the rule in general is that nothing should occur which would estrange the child from the affection of either parent and that a defendant in the position of the appellant should have opportunity to exercise upon the child fatherly care.

We may take judicial notice that the "growing period " of the child here involved, who is of the age of ten years, will no doubt continue until she is at least eighteen years of age. For a period, therefore, of some eight years this defendant is to be practically deprived of the " right to visit " granted to him by the agreement between the parties.

It is asserted that the proof offered below justifies a finding that the health of the child requires that she be taken to California to live. The most that can be said is that there was a sharp conflict in the evidence upon this issue. But even assuming that the evidence in this respect preponderates in plaintiff's favor, I am still of the opinion, for the reasons already expressed, that the provisions of the agreement respecting defendant's right to visitation should not be disturbed. The condition of the child's health has undergone no change since the agreement was made. At that time the plaintiff was well satisfied to remain in or near New York to afford to the defendant the visitation provided for in the agreement. I am satisfied from the evidence that her application for a modification is actuated, not so much because of the welfare of the child, as her desire to take advantage of an opportunity afforded

to live with a relative in California and to have the child removed as far as possible from the residence of the defendant.

I, therefore, vote for a reversal of the interlocutory decree and a denial of the application, without prejudice, however, to a further application by plaintiff for permission to reside with the child at some place within 400 miles of the city of New York, in the event that the court should decide that such relief should be granted.

Judgment, so far as appealed from affirmed, with costs.