"MARY B. SANDERS," Petitioner, *v.* "IRA F. SANDERS," Respondent.*

Domestic Relations Court of New York, Family Court, New York County, June 16, 1942.

*Henry P. Lipscomb,* for the petitioner.

*Alice E. Trubin, Assistant Corporation Counsel, amicus curiæ.*

*Thomas P. Nevin,* for the respondent.

SICHER, J. In this proceeding for a support order respondent challenges, not without at least colorable basis, the primary allegation that petitioner is in law his wife.

Upon filing of the petition on January 30, 1942 there was ordered the customary Probation Bureau investigation and report (Dom. Rel. Ct. Act, §§ 31, 128). On February 3, 1942 respondent appeared

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

by attorney and assistant corporation counsel Trubin represented petitioner, there was entered a temporary order (*without prejudice*) for fifteen dollars, semi-monthly beginning February 6, 1942, and the case scheduled for trial on February 24, 1942.

On that date petitioner appeared by personal counsel who stated that in petitioner's behalf he had just served upon respondent summons in an action for separation in the Supreme Court, Kings County, but urged that this court should,. nevertheless, continue jurisdiction on. the ground that petitioner was likely to become a public charge. (See *Matter of Costa* v. *Costa*, 247 App. Div. 192.)

In view of that plea, and, also, because two witnesses were in attendance as well as the parties and there had been considerable preparation by respondent's attorney and assistant corporation counsel Trubin, I asked Miss Trubin to continue participation as *amicus curiæ* and took evidence on the aforesaid primary issue and the financial circumstances of the parties but reserved decision to await the disposition of the appeal in the case of *Loomis* v. *Loomis* then pending before the Court of Appeals.

Not until June 4, 1942, did the Court of Appeals announce its decision in *Loomis* v. *Loomis*, namely, a unanimous reversal of the judgment of the Appellate Division, Second Department, which had affirmed an order of Special Term granting a motion by defendant-husband for dismissal of a complaint for a declaratory judgment that the parties were still man and wife.

The *ratio decidendi* of the lower courts had been that. an order of the Family Court Division, based on a finding that the marital relationship had been terminated by decree of divorce procured by the husband in New Jersey, was binding on the parties also in the Supreme Court under general principles of *res judicata.*

The Court of Appeals unanimously rejected. that view.

The principal opinion (per CONWAY, J.) states: " A determination by the Family Court that there is an existing marriage, or that one has been terminated, as a preliminary to exercising or declining jurisdiction, is, within its limited summary jurisdiction, binding in that court upon the parties and final until a different determination be there made. * * * It is not binding on the parties in an action in the Supreme Court in which there is directly involved the question whether the same marriage exists or has been terminated. There is no identity of jurisdiction — one is preliminary or incidental, the other direct and primary. There is no identity of cause of action — one is for support and that only, the other for an adjudication of marital status." (*Loomis* v. *Loomis*, 288 N. Y. 222, 224.)

Consequently, regardless of whether I should decide that the evidence adduced on the February 24, 1942 hearing established an existing relationship of husband and wife for purposes of a support order of this court or I should reach the opposite conclusion, the question of the validity of the alleged marriage must be tried *de novo* in the Supreme Court. And in that forum there would be jurisdiction to grant to petitioner, if entitled thereto, not merely support but a judicial separation and separate maintenance or to grant to respondent a judgment of annulment on a counterclaim therefor. This court of limited jurisdiction should therefore not be burdened with a preliminary determination of the same issue *simultaneously* presented to the Supreme Court for a final determination of broader effect, especially an issue involving confused and conflicting facts.

True, I have previously commented that filing a petition in this court does not estop a wife from later seeking in the Supreme Court a decree of separation or divorce or annulment; also, that she can commence and prosecute such a Supreme Court action without asking for a *pendente lite* order for alimony therein and rely upon a prior Family Court support order until entry of the decree in the Supreme Court. (See *Varney* v. *Varney*, 178 Misc. 165, 170, 171.) But that statement related to a prior final order and is inapplicable to a mere temporary order or the kind of situation here presented. Under the particular circumstances petitioner's commencement of a separation action in the Supreme Court immediately before a hearing scheduled in this court constituted an election to make the Supreme Court the forum for all purposes; she may move in the Supreme Court for alimony *pendente lite* and should not rely on the " without prejudice " temporary order entered in this court on February 3, 1942 in anticipation of an early final hearing.

The bar must be discouraged from attempts to use this court as a proving ground for Supreme Court litigation. The time and devoted energies of its over-worked and understaffed personnel is too greatly wanted by petitioners who invoke without aid of counsel the costless machinery of this Family Court for urgently needed support.

Accordingly, and for the additional reasons presently set forth, the proceeding in this court is hereby marked " Reserved Generally," without prejudice, however, to a determination of the amount, if any, of the February 3, 1942 temporary order arrears and the disposition thereof when and if the Supreme Court action shall have been formally discontinued or finally determined in favor of petitioner. But this reservation should not be construed as any

indication that petitioner is entitled to any temporary order arrears award; it is made solely not to foreclose that particular question against petitioner because of her attorney's deferring a motion for a *pendente lite* alimony order or any further steps in the Supreme Court during the interval between the February 24, 1942 hearing and the rendering of this decision.

The primary ground for declining to make any final order in this court for petitioner during the pendency of the separation action instituted on February 24, 1942 is her failure to satisfy me that she is at this time likely to become a public charge. It appears from a statement made by her to the New York State Department of Labor, Division of Placement and Unemployment Insurance, on January 13, 1942, that she had worked at the same factory for four and a half years at forty cents an hour; that since quitting her job voluntarily she had made no attempt at reinstatement or to seek new work through her union or want advertisements or elsewhere; and it is my distinct impression that petitioner has such actual and potential earning capacity as to have enabled her to maintain herself since the commencement of the proceeding in this court.

Another material ground for today's disposition is the unsatisfactory state of the evidence on the primary issue.

Concededly, the parties were the principals in a formal legal ceremony at the city clerk's office, borough of Manhattan, on March 18, 1941. Such ceremonial marriage is presumed to be valid, and any party attacking it has a heavy burden of proof. (*Matter of Callahan*, 262 N. Y. 524; *Matter of Salvin*, 106 Misc. 111, 112; cf. *Matter of Biersack*, 96 id. 161; affd., 179 App. Div. 916; *Matter of Masocco* v. *Schaaf*, 234 id. 181.) " It is not incumbent upon those asserting a marriage to prove that an earlier marriage was terminated by death, annulment or divorce. The law is well settled that in the case of conflicting marriages of the same spouse this presumption of validity operates in favor of the second marriage and the burden of showing the first marriage is on the party asserting it. Even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage." (*Matter of Kopit* v. *Zilberszmidt*, N. Y. L. J., June 11, 1942, pp. 2481, 2482, EDER, J. and cases cited).

" A presumption in favor of marriage can only be negatived by disproving every reasonable possibility. Proof of the solemni-

zation of a ceremonial marriage between parties gives rise to a true presumption of its validity." (*Matter of Dugro*, 261 App. Div. 236.)

However, "the principle of the presumption in favor of the validity of a ceremonial marriage * * * cannot be invoked against an adequate factual demonstration to the contrary." (*Matter of Shuff*, 151 Misc. 754. See *Anonymous* v. *Anonymous*, 174 Misc. 496.)

There has been procured from County Judge's Court, County of Palm Beach, State of Florida, and now in the case file, an exemplified copy of the record of a marriage license issued by a judge of that court on March 2, 1925 to one " ' William Grant ' " and " ' Mary Brown ' " (the petitioner herein), together with an exemplified copy of a March 2, 1925 certificate of one " Mary Henderson," Notary Public, which states that said " William Grant " and " Mary Brown " were by such notary public " duly united in the Holy Estate of Matrimony, by the authority of the within license; " and such exemplified document contains also the certificate of the clerk of said court (a court of record) that " the foregoing is a true and correct copy of the marriage license issued to " William Grant " and " Mary Brown " who were married on the 2d day of March, 1925 and recorded in the Marriage Record No. 4, page 489, as the same appears from the records and files of the County Judge's Office of Palm Beach County, Florida."

It further appears, from a certified transcript of the official minutes, that the petitioner was a witness for the People of the State of New York at a February 5, 1935 trial, in Queens County Court, of said " William Grant " on a charge of having bigamously married one " Anna Thompson " on December 24, 1928, in Queens county, and that as such witness petitioner testified that she had duly married said " William Grant " in Florida in 1925, that she was at that time not married to any other man, that she had never been divorced from him and that she was on February 5, 1935, still his wife.

Moreover, under subpœna of this court, said " William Grant " appeared and testified before me on February 24, 1942. However, he had admittedly contracted a series of ceremonial marriages, and his testimony was unclear as to whether he had become widowed or divorced prior to his marriage to petitioner.

The fact that " William Grant " was acquitted in the aforementioned bigamy trial (necessarily upon the theory that his marriage to petitioner was invalid), is not *res judicata*, inasmuch as " a judgment in a criminal case is generally no bar to a subsequent civil action based on the same facts. (2 Freeman on the Law of

Judgments [5th ed.], § 914. See *Green* v. *Altenkirch,* 176 App. Div. 320, and the cases there cited. Cf. *Maybee* v. *Avery,* 18 Johns. 352.) " (Opinion of LOUGHRAN, J. in *Loomis* v. *Loomis, supra,* p. 226.)

Notice shall be given to the parties pursuant to the subjoined direction.