"CLARA HORNER", Petitioner,* v. "STANLEY HORNER", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Bronx County, July 19, 1944.

---

* The opinion as filed sets forth the true names of all parties, but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act.

990

*Edward Scherer* for respondent.

*David C. Lewis* for petitioner.

SICHER, J.   There are presented for determination **(1)** an unusual form of the recurrent problem of the relations between Family Court support proceedings and Supreme Court matrimonial litigation, and (2) whether, under the particular circumstances, there should be a present exercise of the Family Court's circumscribed power to order visitation. (N. Y. City Dom. Rel. Ct. Act, § 92, subds. 7, 8; L. 1933, ch. 482.)

Petitioner is a New York City public school teacher, and respondent the resident dentist of an up-State institution for mental defectives.   They married on December 8, 1932, and are the parents of a son born July 7, 1936.

Petition for an order against the father for support of that child was filed herein by the mother on July 8, 1942, no contribution through this court for the wife herself being asked then or ever since.

After a contested hearing Justice SIEGEL entered on August 26, 1942, order directing respondent to deposit the weekly sum of $13 for the child's support.   He also ordered visitation at a designated Y.M.H.A. on Sundays between 2:30 and 4:30 P.M.,

expressly deferring, however, until June 29, 1943, special arrangements for visitation during the 1943 summer vacation period. On the date last mentioned Justice SIEGEL continued the August 26, 1942, support order, and indorsed on the petition: "Visitation for summer by consent fixed as follows: Commencing July 11/43 and every second day thereafter until July 26/43, at Liberty or Monticello, in Sullivan County, between 2 and 4:30 P.M. and thereafter every Sunday between the same hours until the child returns to the City and thereafter as heretofore provided on Sunday afternoons."

Those provisions, being consensual, were not embodied in any order of protection.

There are no support order arrears. But in January, 1944, respondent complained to the Probation Bureau of alleged visitation agreement violations, which petitioner ascribed to the child's illness. So, a court hearing on those contentions was scheduled for January 28, 1944; but on that day neither party appeared and there was noted on the petition a stipulated adjournment to March 10, 1944.

Meanwhile, however, on January 13, 1944, petitioner had commenced in the Supreme Court, Bronx County, an action for separation and also for a money judgment in reimbursement for necessaries, and in that action moved for temporary alimony of $25 a week *for her own support, pendente lite* and $750 counsel fee. But no application or *pendente lite* order provision has been made in respect of the child's maintenance; as to him petitioner has relied upon the prior order of this court.

That Supreme Court motion was aggressively contested by respondent; he interposed two voluminous opposing affidavits, as well as a third affidavit against petitioner's proposed order which was entered on February 10, 1944, and granted her motion to the limited extent of awarding temporary alimony, for herself, of $7 a week and counsel fee of $150.

No explanatory opinion was filed. But it appears from the submitted copies of the moving and opposing affidavits that the Supreme Court was fully apprised of the status of the prior Family Court order for the support of the child; its existence and amount were repeatedly stressed by respondent in his attack on petitioner's application to the Supreme Court for alimony of $25 a week for herself; and it may be fairly assumed that the $7 per week alimony and $150 counsel fee figures were fixed by the Supreme Court on the theory that it was within respondent's current financial ability both to pay those sums through the Supreme Court and also to continue to deposit the $13 weekly sum for the child in the Family Court.

No appeal has been taken from that February 10, 1944, order of the Supreme Court. But on February 18, 1944, the parties attended before the Family Court on respondent's plea for modification of its August 26, 1942, order (as continued on June 29, 1943); and hearing was on consent adjourned, first to April 28, 1944, and then to June 30, 1944.

On the date last mentioned there was an extended hearing, including a talk with the child in chambers (with the consent of the parties and counsel).

After study of the briefs, the entire case record, the pleadings in the Supreme Court action, the February 10, 1944, *pendente lite* order, and the supporting and opposing affidavits therein recited, the following disposition is hereby made:

(1) respondent's application to modify the $13 a week order for support of the child is denied, and that order is hereby continued, with leave, however, to respondent to renew (a) after entry of the final judgment in the separation action, or, sooner, if the trial be unreasonably delayed by petitioner, (b) upon entry of a Supreme Court money judgment against respondent in favor of petitioner (cf. *Wahl* v. *Wahl*, N. Y. L. J., July 14, 1944, p. 90, col. 6) or (c) the happening of any other material change of circumstances which would entitle respondent to apply for modification under the rules and practice of this court; and

(2) the visitation provisions heretofore made are hereby canceled, and no further visitation provisions will be made at this time by this court, without prejudice, however, to any remedies to which respondent may be entitled in the Supreme Court, whether by motion in the separation action or by writ of habeas corpus under section 70 of the Domestic Relations Law.

Of course, petitioner's procurement of an order of this court for the child's support did not estop her from later seeking in the Supreme Court a decree of separation; quite properly she may prefer a court of record determination of the matrimonial status which will be broader and entitled to wider recognition than a mere order for the child's support in this statutory court of limited jurisdiction. (See *Loomis* v. *Loomis*, 288 N. Y. 222.) Nor was it obligatory upon petitioner to apply in that separation action for a *pendente lite* order for maintenance of the child; she had the right to continue to rely on the order previously granted by the Family Court for the benefit of the child, and she cannot be required to abandon its protection and pursue a substitute remedy in the Supreme Court. (Cf. *Magner*

v. *Magner,* 144 Misc. 740; *Matter of Magner* v. *Smyth,* 144 Misc. 840; *Rosenberg* v. *Rosenberg,* 241 App. Div. 411.) Indeed, if she had first instituted a separation action in the Supreme Court and even prosecuted it to a final judgment which made no provision for the child's maintenance, there would be express authorization for then filing in the Family Court a petition for an order for support of the child up to his seventeenth birthday anniversary. (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 2, last sentence.)

However, different principles operate if petitioner had asked in the separation action that the *pendente lite* order include maintenance for the child as well as alimony for herself; in such event, by so speculating on her chances of a higher award for the child from the Supreme Court, she would be deemed to have abandoned the Family Court as a forum for the child's support pending the separation action. (See *" Varney "* v. *" Varney ",* 178 Misc. 165; cf. *" Sanders "* v. *" Sanders ",* 178 Misc. 720.) And, having now turned to the Supreme Court for alimony, she is estopped from petitioning the Family Court for an order for her own support during the pendency of the separation action (except in the remote future contingency of likelihood of her becoming a public charge) or until after entry of final judgment in the Supreme Court action and a subsequent failure of respondent to comply with any provision therein for support of petitioner. (See N. Y. City Dom. Rel. Ct. Act, § 137, subd. 2.)

For the foregoing reasons, it is held that the Family Court has not been ousted of jurisdiction to continue and enforce the August 26, 1942, order for support of the child (as continued on June 29, 1943).

It is further held that respondent has not shown any such material change of circumstances as would justify a decrease in the amount of that order at this time.

He did not satisfactorily prove any appreciable increase, except in the amount of income tax, of the reasonable and proper deductions from his gross salary of $2,840 per annum. And, aside from the point that he may not fairly expect to pass on to the child the burden of that slight tax rise,* the additional tax expense is more than offset by two annual increments of salary since August 26, 1942, namely $120, effective July 1, 1943, and another $120, effective April 1, 1944. Such salary increments also partly absorb the $7 per week *pendente lite* alimony

* See as to effect of income tax on alimony, *Kraunz* v. *Kraunz,* 293 N. Y. 152.— [Rep.

allowance to the wife; and the counsel fees and other expenses of the Supreme Court litigation — which may be aggravated by respondent's counterclaim for annulment — are capital charges, and admittedly on January 25, 1944, respondent had bank deposits aggregating nearly $1,400. Moreover, although the February 10, 1944, Supreme Court order, unlike a judgment, is not *res judicata,* it is nevertheless persuasive as a recent judicial appraisal of the current combined needs of the wife and child in relation to respondent's financial ability to contribute toward them during the pendency of the Supreme Court action. (Cf. *Norton* v. *Norton,* 38 N. Y. S. 2d 194, 196.) Because the affidavits in opposition to that motion recite substantially the same evidence as respondent adduced on the June 30, 1944, hearing before me, a reduction of the $13 weekly order for the child would be an indirect and unauthorized review of the Supreme Court order and, in effect, transfer to the child *pro tanto* the burden of the alimony award.

The sole jurisdictional basis for any Family Court direction as to visitation is embodiment thereof in an " 'order of protection,' in assistance or as a condition of an order for support " (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 7). For reasons which seemed to it sufficient, the Legislature in 1943, and again in 1944, rejected the recommendation of the Board of Justices of this court that its powers to order and regulate visitation be enlarged by dispensing with the " order of protection " requirement. And since no " order of protection " was ever entered collaterally to the order for support herein, and consent of the parties does not suffice to confer jurisdiction of the subject matter, it is at least doubtful that the visitation provisions stipulated on June 29, 1943, are operative prospectively and now enforcible *ad invitum.* But in any event there has since intervened the now pending acrimonious matrimonial litigation in the Supreme Court; there have been numerous motions in that Supreme Court action, and the talk with the child in chambers makes it seem that his welfare might be seriously impaired by forcing him to visit his father while the matrimonial litigation kettle is so fiercely boiling. He is a sensitive child, of superior intelligence, who has manifestly been told, or overheard conversations, about the parents' rancours; concededly, the father has spoken to this eight-year-old child about the Lonergan murder case, and seemingly frightened and upset him; and the respondent's demeanor and testimony upon the stand deepen the impression derived from my talk with the child that his reluctance to visit the father during the coming summer vacation is not wholly attributable to petitioner.

I am, of course, mindful of the natural right of even a divorced parent to access to a child in the other parent's custody, and that such right, or privilege, should be denied only under exceptional circumstances, in recognition of the paramount consideration of the welfare of the child.* But, I am satisfied, there here exist such exceptional circumstances, at least insofar as is involved a visitation order of the Family Court.

Even if there were not in active progress bitter litigation in the Supreme Court — five motions therein were decided on June 27, 1944, — I should defer any visitation direction by way of an " order of protection " until having the report and advice of the Psychiatric Clinic of this court (see N. Y. City Dom. Rel. Ct. Act, § 61, subd. 7) and would allow visitation only in the light of such recommendations, to safeguard a bright and high-strung child against the stresses of the emotionalism and recriminations of his parents. And, because the Family Court support order for the child has now become collateral to broader issues being waged in a court of general jurisdiction, there is that additional reason for concentrating all hostilities in the Supreme Court and closing to the embattled parties a second arena.

Finally, it is suggested that petitioner cause to be embodied in any judgment of separation in her favor directions for the maintenance of the child, pursuant to the prayer in the complaint (independently of any provision for petitioner herself). In that way the entire situation would become the subject of a Supreme Court judgment and the Domestic Relations Court of the City of New York cease to be the forum for any vestigial part of the marital controversy, unless and until respondent fails to comply with such Supreme Court directions and the provisions of subdivision 2 of section 137 of the New York City Domestic Relations Court Act thereupon become applicable.

It is also suggested that the parties utilize the voluntary services of Jewish Board of Guardians as precaution against behavior problems of the child not unlikely to develop, if not already germinating, in consequence of the attitudes of the parents toward each other and their respective handling of the child.

Notice shall be given to the parties in accordance with the subjoined direction.

* See, also, *People ex rel. Heller* v. *Heller,* 184 Misc. 709, and *People ex rel. Geismar* v. *Geismar,* 184 Misc. 897.— [REP.