" LOLA ALMANDARES ", Petitioner*, *v.* " DIEGO ALMANDARES ", Respondent.

Domestic Relations Court of the City of New York, Family Court, Kings County, February 15, 1946.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

*Jacob Giddens* for respondent.

*John J. Bennett, Jr., Corporation Counsel (E. Madeline Arcese* and *Florence L. Riley* of counsel), for petitioner.

SICHER, J. There is presented the unsettled question whether a child's permanent removal to another State ousts this court of jurisdiction to continue and enforce against a father still residing or domiciled in the city of New York a support order entered while such child and both its parents resided in the city of New York.

In *Wagner* v. *Wagner* (257 App. Div. 307, 308) the Appellate Division, First Department, held that it is within the discretionary power of this court to refuse to vacate a support order during and because of a merely temporary sojourn abroad, but expressly reserved " the question as to whether the right to continue an order such as was made here ", support for wife and child, " would exist where the persons benefited reside permanently without the State."

The just-quoted dictum was analyzed in *Kurtz* v. *Kurtz* (51 N. Y. S. 2d 581, 585–586, 587) and " *Kirstein* " v. " *Kirstein* " (186 Misc. 213, 215) and cited also in *Wagner* v. *Wagner* (172 Misc. 390, 391), *Caplan* v. *Caplan* (177 Misc. 847, 850), *Urdaneta* v. *Urdaneta* (44 N. Y. S. 2d 142, 144–145) and *Fenelle* v. *Fenelle* 183 Misc. 123, 124–125.) But the precise question so reserved by the Appellate Division was in all those later cases either distinguished or stated to be unnecessary to decide, and has never been definitively answered in any published opinion.

It now arises upon the following facts.

On September 14, 1944, the respondent-father herein was ordered to pay the weekly sum of $12 for the support of the parties' four-year-old daughter (" Constancia ") until further order of this court. The child and both parents then resided in the city of New York.

There was no accompanying direction for visitation, such as this court is empowered to make (although only as a term of an order of protection, under N. Y. City Dom. Rel. Ct. Act, § 92, subds. 7, 8; see " *Horner* " v. " *Horner* ", 184 Misc. 989, affd. *sub nom. Matter of Hartstein* v. *Hartstein*, 269 App. Div. 770).

However, the mother voluntarily accorded to the father, and he exercised, the privilege of periodic visits with the child until June, 1945, when the mother and child suddenly disappeared. Respondent had no knowledge of their whereabouts until receiving from the Clerk of the Circuit Court of Florida, Dade County, about September 15, 1945, notice of an order of publication in an action for divorce which the mother had instituted and which has since eventuated in a constructive service default decree awarding her custody of the child.

Meanwhile, after June 18, 1945 respondent ceased deposits under this court's order; and upon an October 10, 1945, affidavit he moved to vacate that order " on the ground that the petitioner, ' Lola Almandares ' has removed from the State of New York, and has removed the infant issue of the marriage herein from the jurisdiction of this Court to the State of Florida, and on the ground that said petitioner became a permanent resident of the State of Florida, and on the further ground that the petitioner has unjustly and unlawfully and unfairly removed the said infant from the City and State of New York, to the State of Florida, thus preventing the respondent herein from exercising his right of visitation of the said child   *   *   *."

That motion came on to be heard on November 21, 1945. Respondent and his attorney were present, but not petitioner. It appeared that she may not have had actual notice of the motion, that she had not communicated with this court concerning respondent's failure to pay, but that she had procured a constructive service default decree of divorce at Miami, Florida. Accordingly, appropriate directions were given to notify petitioner of the motion, to ascertain her attitude, and also to procure from the Juvenile and Domestic Relations Court in and for Dade County, Florida, a report as to the conditions under which the child was living in Florida and as to the prospects whether moneys collected by petitioner under this court's order would be applied to the child's care and not be diverted to the mother's personal use.

Respondent's attorney's brief was not received until the mother and child had in fact returned to Brooklyn, New York, and resumed their former residence there, exampling the comment in " *Kirstein* " v. " *Kirstein* " (186 Misc. 213, 215, *supra*): "This Court will take judicial notice of the fact that many a Florida sojourn by an erstwhile resident of New York terminates soon after procurement of a Florida divorce decree \* \* \*." So respondent's motion might now be denied simply upon the authority of the actual holding in *Wagner* v. *Wagner* (257 App. Div. 307, *supra*), namely, on the narrow ground that a merely temporary absence from the State does not oust this court of jurisdiction (cf. " *Kirstein* " v. " *Kirstein* ", *supra*).

However, even if the mother had adhered to her December 18, 1945, representation that she was then a resident of Florida and intended to remain there with the child permanently, it would be, and is now, held that this court was not thereby ousted of jurisdiction and that under the particular circumstances there should be exercised the discretionary power to enforce support for the child.

" Residential jurisdiction " of the Family Court is expressly defined in section 103 of the Domestic Relations Court Act of the City of New York. Paragraph (a) of subdivision 1 of that section provides that a husband or father may be required to furnish support if " he \* \* \* is residing or domiciled in the city at the time of the filing of the petition for support " (italics supplied). That provision was already in force when *Wagner* v. *Wagner* (257 App. Div. 307, *supra*) was decided on June 29, 1939 (subsequent amendments having made no change of substance), but it is nowhere mentioned in the *Wagner* v. *Wagner* opinion (*supra*), papers on appeal, or briefs.

Section 103 of the Domestic Relations Court Act was discussed at length in *Kemp* v. *Kemp* (172 Misc. 738), which denied the application of a husband residing in the city of New York to vacate, for alleged lack of subject matter jurisdiction, an order for support of a wife permanently residing in New Jersey.

That *Kemp* v. *Kemp* (*supra*) decision, to the effect that section 103 of the Domestic Relations Court Act expressly confers jurisdiction to order support from a husband who resides or is domiciled in the city of New York when the petition is filed, regardless of the residence or domicile of the petitioner, was stressed in the successful party's brief in *Doyle* v. *Doyle* (261 App. Div. 1068) an April, 1941, Appellate Division, First Department, unanimous affirmance (except for a slight reduction) of a New York Family Court order for support of a wife perma-

nently residing in Massachusetts entered against a husband adjudged to be a resident of the city of New York; the controversy involving squarely the question of the power of the Family Court to order support for a wife who was a permanent resident of another State.

Similarly, the Appellate Division, Second Department, on May 14, 1945, in *Di Martino* v. *Di Martino* (269 App. Div. 781), unanimously affirmed a Queens County Family Court order for a wife and child residing in Massachusetts entered against a husband father residing in the city of New York who had appeared specially to contest the jurisdiction on the ground that the beneficiaries of the requested order were permanent residents of another State.

*Fenelle* v. *Fenelle* (183 Misc. 123),invoked by respondent, deals with a wholly different situation. There the respondent husband had removed from the city of New York to New Jersey, where the petitioner wife also resided. That is, there had ceased to be present *any* of the " residential jurisdiction " requirements of section 103 of the Domestic Relations Court Act and no child was involved. So, as a matter of sound discretion, Justice PAN-KEN properly remitted the petitioner wife to her support remedy in New Jersey.

In the instant matter the order is solely for a child. Accordingly, there exists herein not only the " Residential jurisdiction " factor of respondent's continuous residence in the city of New York but also the additional factor of the deep-rooted common-law and statutory obligation of a father to support his minor child (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460, 462; *Laumeier* v. *Laumeier,* 237 N. Y. 357; *Whitton* v. *Schultz,* 265 App. Div. 583; N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1; § 92, subds. 1, 2, 3, 4). That fundamental duty is measured only by the child's needs in relation to the father's economic station and his means or ability to earn (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1; see " *Johnston* " v. " *Johnston* ", 177 Misc. 618), regardless of the mother's financial resources (*Young* v. *Valentine,* 177 N. Y. 347), and reaches out over State lines. Thus, *Laumeier* v. *Laumeier* (*supra*) upheld the right of a mother to recover in New York from the father moneys spent for the maintenance and education of their child, although born six months after the granting of a divorce to the mother in Missouri when the parties were both residents of that State. Similarly, *Whitton* v. *Schultz* (265 App. Div. 583, *supra*) held that a father domiciled in New York is nonetheless liable for necessaries furnished to his minor child in another State even

though that State had no legislative or judicial jurisdiction over him, and applied the doctrine that ' Any State will enforce through its courts the duty to pay for necessaries of life furnished to a \* \* \* minor child imposed by (a) the state of the domicil of the person upon whom the duty is imposed '' (Restatement, Conflict of Laws, § 459).

The underlying reasoning is that such an action '' brought by the wife is not brought to recover any money for herself; it is brought to recover money spent upon the maintenance and support and education of the child. It is in reality brought for the benefit of and in behalf of the child. The husband did not divorce his child, or dissolve his liabilities to it.'' (*Laumeier* v. *Laumeier*, 237 N. Y. 357, 364, *supra*.) It would therefore be illogical to relieve the respondent father herein of his '' ' natural obligation to furnish necessaries for his infant children ' '' (*De Brauwere* v. *De Brauwere*, 203 N. Y. 460, 462, *supra*) because of the mother's having taken '' Constancia '' with her to another State, especially since such removal was not in violation of any court mandate. So to penalize '' Constancia '' for the mother's act would be inconsistent with the analogous principles that a minor child is not bound by a sister State constructive service default decree procured by its parent (*Matter of Lindgren*, 293 N. Y. 18), nor by the financial provisions of any sister State divorce decree (*Scrima* v. *Scrima*, 265 App. Div. 483; *Stone* v. *Stone*, 44 N. Y. S. 2d 558; *Schacht* v. *Schacht*, 58 N. Y. S. 2d 54; *James* v. *James*, 59 N. Y. S. 2d 460), nor by a separation agreement (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 5).

Moreover, suppose that respondent had gone to Florida and had been sued there by a local merchant for the reasonable value of necessaries furnished '' Constancia ''; would it be a defense to such action that the child was in Florida in consequence of her removal from New York by the mother without the father's knowledge and consent?

There remains to consider whether a father's duty to support his minor child is as a matter of law conditioned on reciprocal opportunity for visitation.

The power to order support as a condition of visitation, or vice versa, is lacking in the procedure for habeas corpus custody hearings (see *Application of MacAlpine,* 50 N. Y. S. 2d 232, and cases therein cited, affd. *sub nom. People ex rel. MacAlpine* v. *MacAlpine*, 267 App. Div. 952; *People ex rel. Geismar* v. *Geismar,* 184 Misc. 897, 911).

However, it seems to be settled that a wife's violation of visitation provisions in a separation agreement precludes her from maintaining against the husband father an action to recover unpaid instalments of support stipulated under such agreement (*Duryea* v. *Bliven*, 122 N. Y. 567; *Muth* v. *Wuest*, 76 App. Div. 332; *Matter of Noel*, 173 Misc. 844). But that ruling is based on a doctrine of the law of contracts concerning the mutual dependency of all promises in a bilateral agreement (see *Cole* v. *Addison*, 153 Ore. 688, Note, 105 A. L. R. 901). The essentially different paramount consideration of the welfare of the child governs any case arising, instead, out of a court judgment or order (*Altschuler* v. *Altschuler*, 248 App. Div. 768).

In the case just cited the Appellate Division, First Department, affirmed an order which denied a father's motion to amend a final decree of divorce by eliminating therefrom a provision requiring him to pay to the mother $15 a week for the support and education of each of the children, although the mother, having remarried, had removed with those children and her second husband to California. '' These circumstances, in our opinion, furnish no reason for the relief of the plaintiff [the father ex-husband] from the obligation to support his children as directed by the decree, the welfare of such children being the paramount consideration. * * * This case involves a judicial decree and for that reason is distinguishable from those in which contracts of separation were presented, in which latter cases the recovery of amounts payable to the wife by the husband for the support of the children has been denied.'' (*Altschuler* v. *Altschuler*, 248 App. Div. 768, *supra*.)

So, too, *Nash* v. *Nash* (236 App. Div. 89, affd. 261 N. Y. 579): in which case, on the ground that the welfare of the child would be thereby served, the court incorporated in the divorce decree modification of previously agreed visitation provisions so as to permit a ten-year-old child to reside with her mother in California for reasons of health until she pass her growing period.

True, there is generally recognized the natural right of even a divorced parent to access to a child in the other parent's custody. Such recognition derives from the concept that while '' The child at tender age is entitled to have such care, love and discipline as only a good and devoted mother can usually give * * * '', nevertheless, '' Meanwhile the father must not be excluded from a full opportunity to have such possession of his child as will enable him to impart to it what from the father enters into the child's character, and to indulge the affection that a father feels and bestows, whereby the boy may grow up

in knowledge and love of him." (*Ullman* v. *Ullman*, 151 App. Div. 419, 424–425.) But that ordinary right of the father must always yield to the good of the child (see *People ex rel. Heller* v. *Heller*, 184 Misc. 709; *" Horner "* v. *" Horner "*, 184 Misc. 989, affd. *sub nom. Matter of Hartstein* v. *Hartstein*, 269 App. Div. 770, *supra*; *Chadwick* v. *Chadwick*, 275 Mich. 226). Sincere love for one's child and genuine paternal regard ought to deter a truly devoted father from withholding moneys for essential needs out of pique against the mother or because visitation has become inconvenient or even impossible. In any event, the weight of authority is that when the custodian has a bona fide reason for removing the child to another State and that course is consistent with the child's welfare, such removal will be permitted, and not constitute an excuse for withholding support, notwithstanding that it makes more difficult the father's visitation (*Altschuler* v. *Altschuler*, 248 App. Div. 768, *supra*; *Nash* v. *Nash*, 236 App. Div. 89, affd. 261 N. Y. 579, *supra*; *Duncan* v. *Duncan*, 293 Ky. 762, Note, 154 A. L. R. 552; *Kane* v. *Kane*, 241 Mich. 96; *Zirkle* v. *Zirkle*, 202 Ind. 129; *Schneider* v. *Schneider*, 207 Iowa 189). Doubtless there have been instances where the mother's violation of the visitation directions in a divorce or separation judgment was so willful and flagrant as to constitute a contempt of court calling for suspension of the husband's performance of the support directions as a means of bringing the contumacious mother into line. But such cases are exceptional, and presumably, because of the mother's financial circumstances, involved no substantial hardship to the child.

From the aggregate of the above-discussed decisions, in combination with the express provisions of section 103 of the Domestic Relations Court Act, flows the conclusion that a child's permanent removal to another State does not oust the Family Court of jurisdiction to continue against a father residing or domiciled in New York City an order for such child's support.

But it does not follow that jurisdiction to continue, or originally to make, such an order must necessarily be exercised. Possession of jurisdiction does not, *ipso facto*, require its use. For example, it is well established that the Supreme Court of the State of New York, in its discretion, may accept or refuse jurisdiction of a tort action between residents of another State (see *Reep* v. *Butcher*, 176 Misc. 369, and cases collated at p. 370), and may likewise entertain, or refuse, jurisdiction in an action between foreigners predicated on a commercial transaction in another country (see *De Flammercourt* v. *Ascer*, 167 Misc. 473). It was therefore observed in *Kurtz* v. *Kurtz* (51 N. Y. S. 2d 581,

587, *supra*) that '' it is arguable that the question posed in Wagner v. Wagner [i.e., the dictum quoted at p. 668 of this opinion] relates not to jurisdiction of the subject-matter or of the person but rather to the inadvisability of exercising discretionary power to make or continue an order for support of a child permanently outside the State because of the practical '' difficulties of proof. For example, unless both parties are present upon the hearing when the support order is initially considered there may be lacking competent evidence of the '' fair and reasonable sum according to his [respondent's] means, as may be determined by the court '' (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1), and of the '' circumstances of the respective parties,'' to which the Family Court is required to have '' due regard '' in exercising the power to '' order support of a wife or child or both, irrespective of whether either is likely to become a public charge ''. (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1.) Or, there might be uncertainty as to the validity or continued existence of the marriage relationship.

Difficulties of proof are less apt to arise when there is involved only the support of a child, since that is predicated primarily on the father's means or ability to earn; also, in the case of an alleged violation of an order already made the situation is usually simpler than upon the original hearing. But when petitioner is not present upon a violation hearing and respondent claims credit for direct payments, disposition as to arrears may be impracticable. Or, for further example, when the child resides at a distance there may be doubt as to the proper application of the moneys intended for the child's benefit (i.e., as to compliance with the last sentence of N. Y. City Dom. Rel. Ct. Act, § 29, subd. 2).

Because of such, and other, procedural difficulties, a justice of the Family Court may understandably be disinclined under the particular circumstances to exercise the court's jurisdiction for the benefit of a wife (or child) residing outside the city of New York at the inception of the support proceeding or upon the arising of issues of violation, modification, or suspension, of an order previously made. Nevertheless, this court should be alert to enforce, wherever reasonably feasible, the clear legislative purpose that '' the Family Court Division of Domestic Relations Court of the City of New York should be a forum open to wives [and certainly children], wherever resident or domiciled, if at the time the wife [or child] invokes the aid of this court the husband has meanwhile established either a residence or a domicile within the city of New York. Otherwise, a hus-

band, by establishing for himself a permanent abode and place of livelihood within the city of New York and remaining away from the jurisdiction where the wife resides or is domiciled or the abandonment occurred, might devise immunity and strip her of remedy." (*Kemp* v. *Kemp,* 172 Misc. 738, 743, *supra.*)

In the instant matter there exists no serious obstacle to adequate proof of the particular facts concerning the child's removal to Florida, her maintenance and needs there, and the extent of respondent's default. The answering affidavit of an assistant probation officer of the Juvenile and Domestic Relations Court in and for Dade County, Florida, shows that the child was properly cared for at Miami by the mother, was placed during the day in a suitable nursery school at a cost of $20 a week, and that the mother's income unsupplemented by contributions from the father was insufficient for the child's maintenance. In view of the small amount of this court's order and the conditions under which the child was living at Miami, there could be no possibility of the diversion, to the mother's personal use, of any moneys that might have been paid by respondent. Besides, the mother is now available to testify and be cross-examined concerning relevant facts.

For the foregoing reasons respondent's motion to vacate the September 14, 1944, order for " Constancia's " support is hereby denied, as a matter of law and discretion; and another hearing has been scheduled for February 20, 1946, at 10:00 A.M., for determination, by the justice then sitting, of (1) the amount of arrears, (2) what, if any, portion thereof should be cancelled, upon petitioner's consent or *in invitum* (under N. Y. City Dom. Rel. Ct. Act, § 92, subd. 10), (3) the manner of payment of any arrears so fixed, (4) the continuance of that order, or such modification or suspension thereof as may be consistent with current circumstances and (5) visitation.

Notice shall be given to the parties pursuant to the subjoined direction.