"EDNA WALKER", on Behalf of "LAWRENCE WALKER, III", and Another, Petitioner, *v.* "LAWRENCE WALKER", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, April 17, 1950.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*Max Krupp* for petitioner.

*Philip Kranzbaum* for respondent.

SICHER, J. Petition for support of two children, "Lawrence III" (born Feb. 7, 1946) and "Carrie" (born Jan. 14, 1948) was filed in their behalf by the mother against the father on December 8, 1949.

Such petition alleges that the parents were duly married on July 21, 1945; that those children are the issue of that marriage; that on or about November 9, 1949, in Dade County, Florida, the mother procured a final decree of divorce which awarded to her custody of those children; that they are dependent on the respondent father for support; and that "said respondent, on or about April 10, 1949 and subsequent thereto, refused and neglected to provide fair and reasonable support for said dependents according to his means and earning capacity"; and the petition closes with a prayer "for such an Order for Support directed to said Respondent, as shall be deemed to be fair and reasonable and for such other and further relief as the law provides."

The marriage, the birth and age of each of the children, their residing in the mother's custody in New York City when the petition was filed and still at the time of the trial, and the father's residence and domicile in New York City are conceded. But sharply challenged is the allegation of past failure to support.

The Florida divorce decree was not offered in evidence nor was there any consideration of the irrelevant question of its validity. For, the petition asks support for the children only. And, seemingly, an application in the mother's personal behalf would not lie. As the procurer of the Florida decree she would not be heard to attack it (*Krause* v. *Krause,* 282 N. Y. 355; but see *Anonymous* v. *Anonymous,* 174 Misc. 496, 500); and this court has no jurisdiction to order support for an exwife (see "*Cannon*" v. "*Cannon*", 190 Misc. 677, and *Helman* v. *Helman,* 190 Misc. 991).

However, whether or not the mother's Florida decree be entitled to full faith and credit in New York and irrespective of the extent or even total omission of any provision therein for maintenance, the children now residing in New York City may seek from this court a support order against their New York City domiciled father (see *Helman* v. *Helman, supra*). "While the decree of divorce dissolves the marital relations of the parties, it did not divorce the father from his child or dissolve his liabilities to it." (9 Carmody on New York Practice [2d. ed], § 194, p. 293, citing *Laumeier* v. *Laumeier,* 237 N. Y. 357.

Accord, *Anonymous* v. *Anonymous,* 171 Misc. 644; *White* v. *White,* 154 App. Div. 250; *Pretzinger* v. *Pretzinger,* 45 Ohio St. 452; see, also, *Schacht* v. *Schacht,* 58 N. Y. S. 2d 54, second opinion 187 Misc. 461). " It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents for causes of which they are innocent and by proceedings to which they are not parties. The legal and natural duty of the father to support his children is not to be evaded by him \* \* \* on the ground of any dissensions whatsoever with his wife. A natural father would not think of doing so, and an unnatural one should not be permitted to do so.'' (17 Am. Jur., Divorce and Separation, § 693, p. 529; see, also, Grossman on New York Law of Domestic Relations, § 157.)

Upon the trial respondent expressly acknowledged that duty and voiced willingness and ability to contribute $20 a week; indeed, during a previous intake conference, at which the mother asked $30 a week, Probation Officer Howell had nearly effected a written agreement between the parties for a consent order of $25 a week pursuant to section 118 of the Domestic Relations Court Act of the City of New York. But that conciliation was blocked by respondent's attorney's refusal to permit him to be placed under a compulsive order in what counsel misapprehended as a criminal proceeding notwithstanding square adjudications by the Court of Appeals that the Domestic Relations Court of the City of New York is a civil, not a criminal court (*Matter of Kane* v. *Necci,* 269 N. Y. 13; accord *People* v. *Rogers,* 248 App. Div. 141, affd. 272 N. Y. 612).

In respondent's behalf it was contended that he had always furnished proper support until June 26, 1949; that his contributions had only then ceased and solely because of his allegedly not knowing thereafter the whereabouts of his two children, who had that day been taken by their mother to Miami, Florida, and remained there until the three returned about the middle of November, 1949, to their former New York City abode (the maternal grandmother's apartment); that the constructive service default Florida divorce decree which the mother had meanwhile procured was ineffectual to sever the marriage relationship; and that respondent contemplated bringing an action in the Supreme Court of the State of New York for an adjudication that he and she are still husband and wife.

But there would be no jurisdiction to award support in such declaratory judgment action if brought (and it has not yet been started) (see " *Kaplan* " v. " *Kaplan* ", 197 Misc. 687),

nor even in a habeas corpus proceeding concerning the custody of the children. (See *Matter of MacAlpine,* 50 N. Y. S. 2d 232, and cases therein cited, affd. *sub nom. People ex rel. MacAlpine* v. *MacAlpine,* 267 App. Div. 952; *People ex rel. Geismar* v. *Geismar,* 184 Misc. 897, 911). For, the Supreme Court has power to direct support solely as an incident to a divorce, separation or annulment action (*Matter of Bedrick* v. *Bedrick,* 151 Misc. 4, affd. 241 App. Div. 807; *Moen* v. *Thompson,* 186 Misc. 647). Therefore, at the present juncture the Family Court Division of the Domestic Relations Court of the City of New York has *exclusive* jurisdiction to order support, for the petitioner's children (see *Helman* v. *Helman, supra,* and cases cited).

Pertinent provisions of the statute governing this support proceeding are Domestic Relations Court Act of the City of New York, section 92 (*Powers*), subdivisions (1), (3), (4), (11), (16); section 103 (*Residential jurisdiction*), subdivision 1; section 111 (*Petition*); section 118 (*Efforts at conciliation*); section 137 (*Divorces, etc.*) subdivision 1; section 151 (*Undertaking for support*) and especially the following:

" § 2. *Definitions.* * * * (11) The person for whom support is asked shall be known as the petitioner * * *. (12) The person legally chargeable with the support of a * * * child * * * shall be known as the respondent."

" § 29. *Support bureau.* * * * 2. Any and all moneys paid into the support bureau of a family court division of the domestic relations court of the city of New York for the support of a * * * child * * * shall upon payment into such support bureau be deemed for all purposes to be the property of the * * * child * * * for whom such money is to be paid; except that where a petition is signed and a proceeding is instituted to obtain support for a child * * * all money or moneys paid pursuant to order entered in such proceeding may be collected by the petitioner in such proceeding who shall be accountable to the person for whose benefit the proceeding is brought for the proper use of such moneys."

[The last-quoted provision avoids the complications of formal guardianship, subject to the father's right to explore and be heard as to whether the support moneys are being applied to the child's personal use. (See *Adams* v. *Adams,* 272 App. Div. 29; cf. " *Almandares* " v. " *Almandares* ", 186 Misc. 667, 675–676, and " *Buenos* " v. " *Buenos* ", 189 Misc. 262, 264–266.)]

" § 101. *Legal liability for support.* 1. A husband is hereby declared to be chargeable with the support of his * * *

children and if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court.''

'' § 129. *Procedure at hearings; rules.* Hearings shall be conducted in accordance with such rules as the board may adopt.''

'' § 12. *Rules and regulations of the board.* It shall be the duty of the board to make rules and regulations governing the following subjects: * * * 2. Regarding practice and procedure in the courts ''.

'' § 131. * * * *presumptions.* * * * In any such hearing or trial wives and husbands shall be competent witnesses against each other * * *; a respondent shall, prima facie, be presumed to have sufficient means to support his * * * child.''

And, Family Court Rule XIII, adopted August 6, 1946, pursuant to sections 12 and 129 of the Domestic Relations Court Act, provides in relation to '' Procedure on Hearing For Original Support Order '':

'' (a) No written answer to the petition or other formal pleading is required.

'' All the allegations of the petition shall be deemed to be denied, and the Court shall receive all competent evidence offered in proof or disproof of such allegations and any affirmative defense thereto.

'' (b) The Court, in its discretion, may require any party or witness to testify (subject, however, to his or her constitutional rights) and may defer decision of a motion to dismiss the petition until all available evidence shall have been taken.

'' (c) Hearings shall be conducted without unnecessary formality but in accordance with due process and common law principles of evidence (except as otherwise expressly provided in these Rules of Practice or by Domestic Relations Court Act of the City of New York or by any portions of the Civil Practice Act when incorporated, by reference, either in Domestic Relations Court Act of the City of New York or in these Rules of Practice).'' (Bender's Court Rules [1st ed.], p. 368. See *Loomis* v. *Loomis,* 288 N. Y. 222, 225.)

Petitioner's counsel, in turn, contended that because of respondent's instability and past nonperformance his offer of voluntary, direct payments was unacceptable, and that the children must be safeguarded by authoritative court intervention.

In view of all the foregoing, wide latitude of examination and cross-examination of the parents was accorded upon a trial of the contested issues of (1) the alleged failure or inadequacy of support prior to the filing of the petition, (2) of respondent's actual and potential earning capacity, (3) of all the other " circumstances of the respective parties " determinative of the measure of support which the petitioner's children are entitled to receive from the respondent's father, and (4) the request for a bond to secure any support order.

No useful purpose would be served by a detailed narrative. Suffice it to recite only a few salient facts and inferences therefrom and to state that *all* of the evidence (including· the demeanor of the parties), the stenographic minutes, and the briefs of counsel have been earnestly considered in arriving at today's decision.

Respondent's attorney initially objected to the introduction of any evidence of facts occurring before April 10, 1949, doubtless with the objective of creating a record consistent with the contention that the respondent's several months' failure to contribute toward his children's support was due wholly to their having sojourned with the mother at an address allegedly unknown to respondent. However, respondent's counsel frankly disclaimed any surprise; the April 10, 1949, date had been typed in the printed form by a lay assistant in the clerk's office; and, as provided in Family Court Rule XIII, the proceedings in this court are not conducted with all the strictness of a court of record in which parties must be represented by attorneys, who prepare formal pleadings (see " *Primavera* " v. " *Primavera* ", 195 Misc. 942, 945–946).

Moreover, the furtherance of justice required holding the door wide open for a complete presentation of the actual extent of respondent's discharge of a father's duty of support (Rules Civ. Prac., rule 166). " The obvious intention of rule 166 is to give to the judge presiding at the trial the full power of the court to grant amendments to pleadings." (*Feizi* v. *Second Russian Ins. Co.*, 199 App. Div. 775, 777; cf. *Coughlin* v. *Jones*, 162 Misc. 843, 846–847.) Unlike the Civil Practice Act, which is expressly limited to courts of record (Civ. Prac. Act, § 1; see " *Denton* " v. " *Denton* ", 179 Misc. 681), the Rules of Civil Practice " shall be binding upon all the courts in this state and all the justices and judges thereof, except the court for the trial of impeachments and the court of appeals." (L. 1920, ch. 902, as amd. by L. 1921, ch. 370; also L. 1921, ch. 302.)

The facts developed upon an extended hearing constrain the conclusion that respondent's version of the total omission of support contributions since June 26, 1949, and his profession of willingness to discharge his support duty voluntarily are spurious and unworthy of belief.

Significant also is his material default of compliance with the temporary order (originally entered Dec. 9, 1949, and continued on Dec. 21st) in the face of the express warning at the close of the trial on the latter date that in its final determination the court would be guided somewhat by respondent's performance meanwhile. (See Family Court Rule XIV, subd. [d]; Bender's Court Rules [1st ed.], p. 368.)

Decision has been deferred until now partly because of pressure of other judicial duties but also with the objective of applying the tests of time and of the interim conduct of the parties. Against total accruals of $450 under such *pendente lite* weekly order respondent has made irregular deposits aggregating only $125, with consequent temporary order present arrears of $325.

The entire picture is the unfortunately familiar one of emotionally immature young parents. The mother's father and mother are also separated; respondent is a professional musician (trumpet player) of such skill and reputation as to command a salary as high as from $135 to $165 a week, but has laid aside no savings, and between engagements seeks no other income but has relied on borrowings; during six to eight months in each year he has been on the road; and until the break in April, 1949, his wife, children, and also himself (while in New York City) were maintained at the maternal grandmother's home largely on the bounty of his parents-in-law and with comparatively small contributions from himself. It is, therefore, understandable that he was upset by his wife's having turned him out and procured a Florida divorce; concededly, while at Miami, Florida, she received from him, about July 4, 1949, a letter pleading for reconciliation, and, shortly afterwards, an olive-branch card from him, both of them ignored by her. However, even assuming *arguendo* that he had no knowledge of the *exact* whereabouts of the mother and children in Florida — there was no evidence as to whether or not the Florida divorce papers containing her alleged Florida domicile reached him — nevertheless, he knew from negotiations with the mother's attorney that she was contemplating going to Florida for a divorce, his two afore-mentioned communications to the mother were addressed to and forwarded from their New York City

abode; he made no effort to ascertain, from either of the maternal grandparents, how the children were being maintained but apparently assumed the continued bounty of the mother's parents; he made no effort to inquire as to the children's needs nor to contribute toward their support after their return to New York City on November 10, 1949, and after meeting and speaking to his son on the street before the filing of the petition.

Upon the trial he produced no copies of his income tax returns or other accounting data, except certain witholding tax statements which, on cross-examination, were demonstrated not to be all-inclusive, and the evidence adduced by respondent in relation to the statutory presumption of ability to furnish adequate support (N. Y. City Dom. Rel. Ct. Act, § 131) is admitted in his attorney's brief as showing at least a gross income of $3,200 for 1948 and $3,110 for 1949, approximately $3,000 and $2,900 respectively after deducting Federal withholding tax, social security tax, and union dues, and a *net* of approximately $2,500 for each of those years after allowing for his expenses for hotels, meals, laundry, and gratuities while traveling with bands outside New York City.

Petitioner's counsel asks for an order of $40 a week. If respondent's children had been placed in boarding homes as destitute or neglected, the department of welfare of the city of New York would pay approximately $35 a week for such boarding home care; and respondent has a potential earning capacity which might justify a present award of $30 a week. However, it is not improbable that respondent's earnings during 1950 will be somewhat less than during 1948 and 1949, by virtue of a drop in entertainment field business; so that a more realistic figure, taking into account all the circumstances, including the still tender age of the children, is the temporary order amount of $25 a week, hereby made the final order sum, subject to modification from time to time according to the rules and practice of this court upon proof of any material change of circumstances.

Accordingly, upon the entire record, the court hereby finds that the allegations of the petition have been sustained by a fair preponderance of the credible evidence; there is hereby denied respondent's motion to dismiss the petition, made at the close of petitioner's testimony and renewed at the close of the whole case; the allegation of April 10, 1949, as the beginning date of respondent's failure or inadequacy of support is hereby amended to conform to the proof; respondent is hereby held

chargeable with the support of the two dependent children named in the petition, according to his means; and he is, therefore, hereby ordered and directed to pay into this court, until further order, for their support the following sums:

(1) $25 a week, each and every week, beginning April 18, 1950, until further order of the court;

(2) *in addition,* the sum of at least $10 a week, each and every week, beginning May 2, 1950, on account of today's temporary order arrears of $325, until such arrears will have been paid in full; such temporary order arrears being carried over and made part of today's final order, pursuant to Family Court Rule XIV.

To assure compliance with today's order, respondent is hereby ordered to post, by 10:00 A.M. on May 2, 1950, a cash bond in the sum of $300, or in a default of furnishing such surety to stand committed to the warden or keeper of the City Prison or Jail, or Workhouse of the City of New York for a period of four months from date of commitment, or pending further order of the court (see N. Y. City Dom. Rel. Ct. Act, § 92, subd. [11]; § 151, § 154, and *Monroe* v. *Monroe,* 45 N. Y. S. 2d 589; also Family Court Rule XXXVI; Bender's Court Rules [1st ed.], p. 374). Such deposit shall stand as security for all payments accruing on today's order until May 1, 1951; and if sooner exhausted by drafts thereon in consequence of respondent's default, a further bond may be requested under section 159 of the Domestic Relations Court Act.

It is reported that the parties have sensibly made amicable visitation arrangements. When and if there arise any future controversy concerning visitation, that phase may be scheduled in ordinary course for disposition by the Justice then sitting. But any dispute concerning visitation shall not affect or impair respondent's duty to comply with today's support order, unless and until otherwise expressly directed. (See Grossman on New York Law of Domestic Relations, § 162, and cases cited; also, the discussion in " *Almandares* " v. " *Almandares* ", 186 Misc. 667.)

Notice shall be given to the parties pursuant to the subjoined direction.