Argued June 5; reversed June 23, 1936

COLE *v.* ADDISON

(58 P. (2d) 1013)

*Guy L. Wallace,* of Portland (Roscoe P. Hurst, of Portland, on the brief), for appellant.

*Ben Anderson,* of Portland, for respondent.

RAND, J. In April, 1920, the plaintiff, who has since remarried, obtained a decree of divorce from the defendant in the circuit court for Clackamas county and was awarded the custody of their daughter, June Addison, who was then nearly eight years of age. By its terms, the decree provided that the defendant should have the right at all reasonable times to see and visit

with the child. The decree, however, contained no provision settling their property rights, nor did it fix any amount that the defendant should pay for the support and maintenance of the child.

In order to settle those matters, the plaintiff and defendant entered into a contract on November 22, 1920, wherein it was agreed, among other things, that the defendant would pay to the plaintiff "for the use and benefit of June Addison, the minor child above mentioned, the sum of forty ($40) dollars per month for the support, education, maintenance and care of the said minor child, June Addison, the first payment to be made on or before the 10th day of December, 1920, and a like payment of forty ($40) dollars on or before the tenth day of each succeeding month thereafter during the minority of said child or so long as said child shall remain a dependent".

At the time this contract was entered into and prior thereto, the parties were residents of the state of Oregon. In 1921, however, the plaintiff decided to become a permanent resident of the city of New York and to take the child with her and thereupon it was mutually agreed that the contract of November 22, 1920, should be so modified that the plaintiff and the defendant should have the custody of the child every alternate year and that the defendant should pay the expenses of bringing the child back to Oregon and returning her to her mother in New York, and that during the time the child was in the custody of the defendant he should not be required to make any payments to the mother for the use and benefit of the child.

Pursuant to said contract, as so modified, the plaintiff took the child to New York City during the spring

or summer of 1921, and thereafter, in violation of the terms of the agreement, kept the child there and has ever since refused to permit the defendant to have the custody of the child and on September 20, 1924, she stated her refusal to comply with the contract by writing to the defendant as follows: ''I hereby notify you that you can not and shall not for any time long or short take June away from me.''

Notwithstanding plaintiff's said refusal to perform the contract, defendant paid all said monthly installments up to and including July, 1923. Prior thereto, he also paid certain other necessary expenses of the child amounting to $550 and had in all respects complied with the terms of said contract. After July, 1923, and because of plaintiff's refusal to perform the contract, the defendant made no payments to the plaintiff for the use and benefit of the child, although he did from time to time furnish the child with clothing, supplies and other necessities at considerable cost and expense to himself. Upon being notified by plaintiff in writing on September 20, 1924, that she would not permit the defendant to have the custody of the child, as she had previously agreed to do, the defendant moved to modify the original divorce decree so as to permit him to have the custody of the child in accordance with the terms of the contract, and obtained from the circuit court for Clackamas county an order granting him such custody in accordance with the terms of the contract, but, upon an appeal being taken by the plaintiff to this court, that order was reversed (see *Addison v. Addison*, 117 Or. 80 (242 P. 832,)) on the ground that the welfare of the child was the primary consideration to which the contract rights of the defendant must yield, but no order was made or entered

in said proceedings requiring the defendant to pay any sum or amount to the plaintiff for the use and benefit of the child, and, hence, it follows that plaintiff's right to recover in this action is based wholly upon the contract of November 22, 1920, as subsequently modified by mutual consent, and not upon any order or decree of the court.

On July 29, 1930, June Addison reached the age of 18 years and had graduated from high school the preceding month. The defendant then went to New York and brought his daughter back to Oregon and has ever since provided for her and paid all her expenses, including the expense of a college education.

On December 4, 1934, the plaintiff commenced this action, seeking to recover, under the contract, the aggregate of all said monthly installments with interest upon each thereof from August 10, 1923, to July 10, 1930, and demanded judgment for the sum of $4,960 with interest on each installment to the commencement of the action. The cause was put at issue and tried before the court without a jury and the court made findings of fact substantially in accordance with what has been recited above, and, based thereon, entered judgment in favor of the plaintiff for the sum of $890. In computing the amount of the judgment, the trial court included in the judgment all the monthly installments that plaintiff would have been entitled to receive had she complied with her contract and deducted therefrom the $550 above referred to, and, from this judgment, the defendant has appealed.

■ Obviously, under the facts above stated, the plaintiff was not entitled to recover any sum of money from the defendant. As stated, she bases her right wholly

upon the contract and not upon any decree or order of the court. She, therefore, must stand or fall upon the contract itself. The plaintiff, notwithstanding her own default, argues that she is entitled to recover because her stipulation to permit the defendant to have the custody of the child during alternate years was an independent covenant and not a dependent covenant, or a condition precedent to liability. While her express stipulation that the defendant should be permitted to have the custody of the child during the times provided in the contract was not, strictly speaking, a dependent covenant, it was a material one and her default was a breach which could not be paid for in damages. Having obtained a divorce and having been awarded the custody of the child, she could not permanently remove the child from the state, except by defendant's consent, without obtaining an additional order in the divorce suit granting her that privilege, for the decree itself provided that the defendant should have the right to visit the child at such times and places as may be found suitable and convenient for both parties. To avoid that difficulty, she expressly stipulated that the defendant should have the right to the custody of the child during alternate years and, in consideration of that stipulation, he consented that she could take the child into another state and thereby surrendered his right of visitation during such times as the plaintiff should have such custody. In conformity with this agreement, the defendant paid the monthly installments for a full year after the plaintiff had defaulted and refused to perform, and then ceased paying only after learning that plaintiff would not perform and that the breach upon her part was to be a continuing one. In other words, he performed and,

when it became her duty to perform, she refused, and this excused him from any further performance upon his part.

■ As pointed out by Professor Williston, in 2 Williston on Contracts (1920 Ed.), section 827, all promises in a bilateral contract will be regarded as mutually dependent whenever it is possible to do so, and this rule, he says, is invoked in order that justice be done between the parties. In support thereof, he quotes from *Stockstill v. Byrd,* 132 La. 404 (61 So. 446, 447), as follows:

"The courts at the present day incline strongly against the construction of promises as independent; and, in the absence of clear language to the contrary, promises which form the consideration for each other will be held to be concurrent or dependent, and not independent, so that a failure of one party to perform will discharge the other, and so that one can not maintain an action against the other without showing the performance or tender of performance on his part."

Again, in section 829, he says:

"Undoubtedly the most important element in determining the liability of one party to a bilateral contract when the other party has not performed, is the relative order of performance fixed by the contract."

In the note following, Professor Williston quotes from *McCormick v. Badham,* 191 Ala. 339 (67 So. 609), as follows:

"The parties 'must be held to have intended the performance of their respective acts, in the order of time indicated by their covenants'. Nesbitt v. McGehee; 26 Ala. 748. The precedency of covenants 'must', as said by Lord Mansfield in his quotation in Nesbitt v. McGehee, 'depend on the order of time in which the intent of the transaction requires their performance'.

" 'Where. a specified thing is to be done by one party as the consideration of the thing to be done by the other, it is undeniably the general rule that the covenants are mutual, and are dependent, if they are to be performed at the same time; and if, by the terms or nature of the contract, one is first to be performed as the condition of the obligation of the other, that which is first to be performed must be done, or tendered, before that party can sustain a suit against the other.' Phillips Const. Co. v. Seymour, 91 U. S. 646, 650, 23 L. Ed. 341; Loud v. Pomona Land Co., 153 U. S. 564, 14 Sup Ct. Rep. 928, 38 L. Ed. 822.''

Again, in section 830, he says:

''When the performance of mutual promises can not be performed at the same instant they must either be performed without reference to one another or one must be performed prior to the other. Unless the contract or usage otherwise indicates, if both promises need time for their performance, it seems that it is the duty of each party to proceed without waiting for the other to perform, since neither party can demand that the other's performance shall come first. Nevertheless the promises are not absolute and independent in any strict sense; for should one party go forward with his performance and the other in violation of his duty should fail for a considerable time to perform, there can be no doubt that the former would be excused from continuing to perform.''

See also 5 Page on Contracts, section 2926 and section 2951. In the latter section, the author says:

''* * * If two acts are to be done at different times, each of which times is fixed, and there is a necessary priority of one over the other in point of time, performance of the prior covenant is precedent to the right of enforcing the later covenant.''

In *Duryea v. Bliven,* 122 N. Y. 567, (25 N. E. 908), the court said:

"* * * The agreement of the wife and trustee to permit the husband to associate with his children was not only valid, but was a material part of the contract which could not be violated by the wife, and a recovery be sustained in her favor for her benefit of the sum which he stipulated to pay monthly."

In *James v. Golson*, (Tex.) 174 S. W. 688, Point 2 of the syllabus reads as follows:

"Where plaintiff and defendant, formerly husband and wife, entered into a separation agreement, confirmed by the court, whereby defendant agreed to convey certain property to plaintiff, and wherein it was provided that each party should have the custody of their children one-half the time, and where plaintiff subsequently breached the agreement by removing the children from the state, she could not thereafter recover damages from defendant for breach of his agreement by conveying the wrong land to her."

The judgment, therefore, will be reversed and the cause will be remanded with directions to dismiss the action.

CAMPBELL, C. J., and BELT, J., did not participate in this opinion.