'' THERESA MOSES '', Petitioner, *v.* '' ABEL MOSES '', Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, November 29, 1948.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

*" Theresa Moses "*, petitioner in person.

*" Abel Moses "*, respondent, represented by brother-in-law.

SICHER, J. At the conclusion of an extended hearing on October 11, 1948, attended by petitioner in person and her brother, B. S., and by respondent's brother-in-law, A. C., as attorney in fact, decision was reserved pending a restudy of the voluminous file and the preparation of this memorandum explanatory of my final conclusion that the proceeding should be now marked " Reserved Generally " under Family Court Rule XXIV (Bender's Court Rules [1st ed.], p. 371), which provides (insofar as pertinent):

" (a) There may be marked ' Reserved Generally ' any proceeding in which:  *  *  *

" (2) As the result of petitioner's  *  *  *  non-action, or action (including recourse to the Supreme Court of the State of New York or other forum of competent jurisdiction), it appears to the Court that petitioner is no longer  *  *  * entitled to continue it;

" (3) Respondent has instituted a matrimonial action in the Supreme Court of the State of New York or other forum of competent jurisdiction and petitioner has appeared in that action  *  *  *;

" (5) On  *  *  *  the Court's own motion, the Court is satisfied that, for reasons beyond the control of any party and not due to bad faith, respondent will be unable for a substantial period to contribute support;  *  *  *

"(b) Each proceeding within any foregoing category may be marked 'Reserved Generally' with the intent that it continue dormant until the Court, on material change of circumstances or for other just cause, permits the proceeding to be prosecuted by restoring it to a Day Calendar at any time on proper request of a party or on the Court's own motion.

"(c) The effect of marking a proceeding 'Reserved Generally' shall be to vacate any support order, outstanding process, order of protection, or provision for visitation, and to terminate probation; also to cancel arrears, when, if and as expressly directed."

Today's disposition is based upon the following facts and applicable law.

This proceeding was begun by the wife-mother's filing on October 13, 1942, a petition for support which alleged that the parties had duly intermarried on October 29, 1927, in New York City, are the parents of a child, "Roberta" (born October 22, 1935) and that since about July, 1941, the respondent husband-father had refused and neglected to provide fair and reasonable support according to his means and earning capacity.

On the day when the petition was filed, the petitioner (represented by an assistant corporation counsel of the city of New York) and the respondent (represented by personal attorney) both executed a court Form F-6 agreement, pursuant to section 118 of the New York City Domestic Relations Court Act, for a consent order directing the deposit in this court of $90 each month, beginning November 1, 1942, until further order, toward the support of the wife and child. Such agreement also provided: "Respondent to have right of visitation for Sunday from 1 to 5 P. M. Respondent to call for child at her home, and is free to take her out by himself". However, that visitation provision was not expressly incorporated in the support order nor in any order of protection (see "Horner" v. "Horner", 184 Misc. 989, affd. sub nom. Matter of Hartstein v. Hartstein, 269 App. Div. 770).

Simultaneously, on October 13, 1942, there was entered, also on consent, a companion order, pursuant to subdivision 2 of section 132 of the Domestic Relations Court Act, authorizing and directing the appropriate municipal official to deduct, and send to this court, said monthly sums of $90 out of respondent's then monthly compensation of $204.32 as teacher in a New York City high school.

Those two October 13, 1942, orders were entered on consent, and after only a *pro forma* hearing. So, neither then nor at

any subsequent time has there been an express adjudication as to whether the wife herself, like the child, is entitled to support "according to respondent's means" or only on a "public charge basis".

Moreover, from an inspection of the indorsements on the petition and the probation bureau chronological record it appears that respondent was personally never again present before the court after his single, initial attendance on October 13, 1942; that although petitioner was present on January 24, 1945, February 7, 1945, March 7, 1945, March 23, 1948 and October 11, 1948, neither party attended or was represented at several other scheduled hearings; that in no instance were both parties present together since October 13, 1942; but that they are prolific and emotional letter writers. It is therefore appropriate to bear in mind that although the Family Court Division of Domestic Relations Court of the City of New York is designed for socialized treatment of family legal problems and constantly strives for a sympathetic and humane approach to broken home problems and to utilize all available medical implementation and public and private social agency facilities, nevertheless it is a *court,* where an official stenographer takes down the minutes of every hearing, subject to the right of appeal, upon a printed record, to the Appellate Division of the Supreme Court, and that all Family Court Division, as well as Children's Court Division, proceedings are governed by the guiding principle enunciated by the New York Court of Appeals in an oft-quoted discussion of the functions and procedure of Children's Courts in this State, namely:

"The customary rules of evidence shown by long experience as essential to getting at the truth with reasonable certainty in civil trials must be adhered to. The finding of fact must rest on the preponderance of evidence adduced under those rules. Hearsay, opinion, gossip, bias, prejudice, trends of hostile neighborhood feeling, the hopes and fears of social workers, are all sources of error and have no more place in Children's Courts than in any other court." (*People* v. *Lewis,* 260 N. Y. 171, 178. See *Anonymous* v. *Anonymous,* 24 N. Y. S. 2d 613, 614-615.)

Still another factor against a present continuance of this proceeding is that since the initial October 11, 1942, hearing neither party has been represented by an attorney at law but has presumed on the court's indulgence to speak through laymen attorneys in fact, unfamiliar with legal procedure and in this case further handicapped by subjectivity as close relatives animated by feelings of partisan hostility.

Moreover, this is a Domestic Relations Court of the *City of New York;* it is a statutory court of limited jurisdiction with only those enumerated powers expressly conferred by the Legislature; and section 103 of the Domestic Relations Court Act contains certain residential jurisdiction requirements which are no longer met in the instant proceeding.

The afore-mentioned October 13, 1942, consent orders had been preceded by a considerable period of voluntary separation and informal financial arrangements. Seemingly, the incompatibility of two high-strung persons was aggravated by respondent's ill-health. Already in January, 1934, he was invalided by a hemoptysis; and although he resumed teaching again in September, 1936, he had a breakdown in July, 1937, and did not return to his job until February, 1939.

If the marital relations had not then already deteriorated, the final onset of tuberculosis and the resultant impairment of respondent's earning capacity and his greater need for personal care and sympathy might have brought the spouses closer together. Increased devotion and deepened love have been known to follow like afflictions. But in this instance respondent's illness, instead, became the final chapter of years of mounting mutual unhappiness, so that the parties' home had been irretrievably broken long before recourse to this court. The afore-mentioned October 13, 1942, orders, therefore, served only to implement a stipulated apportionment of respondent's then earnings of $204.32 per month.

Subsequent events indicate the wife's refusal, or perhaps emotional inability, to accept the fact of respondent's serious illness and his consequent incapacity to contribute support in the original amount.

(Next follow, but here omitted from this published version, details of respondent's serious illness and consequent court directions between January 24, 1945, and October 11, 1948.)

At the October 11, 1948, hearing the following additional facts were proved by the testimony and admissions of petitioner and her brother:

(a) Petitioner is employed as a school teacher in an up-State community, away from New York City, at a gross salary of $250 a month or a net of approximately $219.

(b) Petitioner is no longer a resident of New York City.

Her current job is in another part of this State; she trained at a State teachers' college in another State, and was there registered as a resident of that State.

Petitioner's address in the October 22, 1942, petition was "Woman's Shelter, 630 East 6th Street, Manhattan", obviously a temporary place of sojourn. Since then she has resided, and attended a State teachers' college, in another State; her present alleged New York City residence is, instead, the home of a friend and for herself a mail address only. She has never registered or voted in New York City or anywhere else.

(c) The child "Roberta" has been at an undisclosed school abroad for upwards of a year.

(d) Respondent has been living in X Town, Colorado, continuously since February, 1945.

(e) There is now pending a divorce action instituted by respondent in Colorado as a resident of that State. Petitioner has appeared in that action by a Colorado attorney, is contesting it, and also negotiating therein issues of custody, property and support.

It is established by recent decisions of the United States Supreme Court that any judgment entered in such Colorado divorce action would be entitled to full faith and credit throughout the United States. (*Sherrer* v. *Sherrer,* 334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378.)

Per contra, an order of the Family Court Division of Domestic Relations Court is not so entitled nor would it be binding even upon the parties themselves in any subsequent litigation in the Supreme Court of the State of New York (see *Loomis* v. *Loomis,* 288 N. Y. 222; *Reisman* v. *Reisman,* 46 N. Y. S. 2d 335).

Thus, the Colorado court is the proper forum for determination of *all* current issues between the parties (including any duty of support); and both parties have now in legal effect elected that superseding forum in place of this local court of limited jurisdiction.

(f) The provisions in the October 22, 1942, agreement concerning visitation have not been performed; indeed, petitioner has concealed from respondent the child's whereabouts and cut off communication between him and that daughter for several years.

If those visitation provisions had been embodied in a formal separation agreement, their violation would have precluded petitioner from maintaining a contract action against respondent to recover unpaid installments of support (*Duryea* v. *Bliven,* 122 N. Y. 567; *Muth* v. *Wuest,* 76 App. Div. 332; *Matter of Noel,* 173 Misc. 844). But that ruling is based on a doctrine of the

law of contracts concerning the mutual dependency of all promises in a bilateral agreement (see *Cole* v. *Addison,* 153 Ore. 688, Note, 105 A. L. R. 901); the essentially different paramount consideration of the welfare of the child governs any case arising, instead, out of a court judgment or order (*Altschuler* v. *Altschuler,* 248 App. Div. 768).

Moreover, no visitation directions were incorporated as a condition of the October 22, 1942, consent support order; and in any event respondent's illness and residence in Colorado made such visitation impossible after February, 1945. But there is generally recognized the natural right of even a divorced parent to access to a child in the other parent's custody. Such recognition derives from the concept that while " The child at tender age is entitled to have such care, love and discipline as only a good and devoted mother can usually give ", nevertheless, " Meanwhile the father must not be excluded from a full opportunity to have such possession of his child as will enable him to impart to it what from the father enters into the child's character, and to indulge the affection that a father feels and bestows, whereby the boy may grow up in knowledge and love of him." (*Ullman* v. *Ullman,* 151 App. Div. 419, 424–425.)

Accordingly, petitioner's overpossessiveness of " Roberta " and her dropping an iron curtain between the child and her sick father over the years constitute an additional reason for exercising discretion against continuance of the jurisdiction of this court in petitioner's behalf.

(g) Respondent's only income shown on the October 11, 1948, hearing was a total monthly income of $70.39, consisting of a disability payment from X Life Assurance Society ($20), an allowance from teacher's retirement system of New York City ($44.39) and a subsidy of $6 from an Ex-Patients' Home (for fares and supplementary lunches); and respondent claimed the following reasonable and necessary expenses totalling $53.50 per month: taxes on property in Pennsylvania, $1.50; fares, $5; lunches and supplementary meals, $22; newspaper, $1.50; phone, $1; postage, $1; tailor, $1; cleaners and supplementary laundry, $3; barber, $1.50; toilet articles, $2; stationary, $1; clothing, $5; books (school), $3; miscellaneous (including contributions), dues, $5; total, $53.50.

It since appears that the afore-mentioned $70.39 figure will presently rise to $123.72, in consequence of a part-time temporary job at $79.33 a month but stoppage meanwhile of the $20 disability insurance payment. However, under all the

circumstances of the respective parties such new aggregate would still not justify a present order of this court. A husband-father's duty of support "*is to be measured with reference to his pecuniary ability,* honestly exercised, or his pecuniary resources * * *." (Italics supplied.) (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460, 464.) The words just quoted were incorporated in an opinion of then Supreme Court Justice, now Surrogate COLLINS, denying a wife's motion for temporary alimony, in which opinion he made the following comment on the plaintiff wife's prayer for a *pendente lite* award for herself and children in the face of the husband's pulmonary tuberculosis: " This plight is most unfortunate, but the marital vows contain debits as well as credits — sickness and adversity as well as health and prosperity." (*Stafford* v. *Stafford,* 53 N. Y. S. 2d 414, 415.) " While it is true that cases have held that the law will not starve the wife and feed the husband, it is also true that the law will not starve the husband and feed the wife. Each case must be decided on the circumstances disclosed ". (*Weigold* v. *Weigold,* 236 App. Div. 126, 127.) " It is quite conceivable that an order may be made for the support of dependents which is not adequate because of the inability of the person chargeable to meet an adequate order. The ability of the respondent, as well as the need of a dependent, may govern the amount of the order." (*Domb* v. *Domb,* 176 Misc. 409, 410–411, PANKEN, J.)

Still another cogent reason is that there no longer exist the residential jurisdiction requirements prescribed in section 103 of the Domestic Relations Court Act. The October 22, 1942, orders were based on respondent's then residence in New York City and his then employment as a local high school teacher. Such residence and employment have now ceased, and both wife and the child also are no longer in New York City. Upon an analogous state of facts Justice PANKEN terminated a Family Court support order in *Fenelle* v. *Fenelle* (183 Misc. 123). True, as a general rule jurisdiction once acquired is not defeated by subsequent events, even though they are of such character as would have prevented jurisdiction from attaching in the first instance. (15 C. J., Courts, § 135; 21 C. J. S., Courts, § 93, and cases cited.) But that rule is not inflexible, especially in respect of courts of limited jurisdiction. Thus, the New York Appellate Division, First Department, queried in *Wagner* v. *Wagner* (257 App. Div. 307, 308), whether the right to continue a Family Court support order exists when the beneficiary resides permanently outside the State of New York; and although in

*Adams* v. *Adams* (272 App. Div. 29) it resolved that doubt in favor of a child residing in New Jersey, such case dealt with a father still residing in New York City, and it also recognized, in effect, the principle discussed in " *Almandares* " v. " *Almandares* ", (186 Misc. 667) namely, that possession of jurisdiction does not, *ipso facto*, require its use but the Family Court has the right to exercise discretion against continuing or originally making a support order in behalf of a nonresident beneficiary. (See " *Almandares* " v. " *Almandares* ", *supra*, and " *Buenos* " v. " *Buenos* ", 189 Misc. 262.) Moreover, in the instant proceeding the court would be powerless to enforce any new support order at this time; its process does not reach beyond the State of New York; respondent's retirement pension is insufficient to sustain an order under subdivision 2 of section 132 of the Domestic Relations Court Act; nor has this court jurisdiction to garnishee the life insurance disability monthly payments.

For all the foregoing reasons, petitioner's application to terminate the support order suspension directed by Justice MARCHISIO on March 2, 1948, and again on March 23, 1948, is in all respects denied, and the proceeding is hereby marked " Reserved Generally " under Family Court Rule XXIV.

Justice MARCHISIO did not fix or dispose of the arrears, if any, accrued at the time of the March 2, 1948, suspension. But it now appears that although there were on March 2, 1948, book arrears of $598.88, voluntary subsequent deposits of $120 would reduce that book figure to $478.88; also, that such residue accrued since June, 1945, solely because, and to the extent of, the deficit between the amount of net salary earned by respondent and the $90 a month deductions under the October 22, 1942, order on his then salary. That is, petitioner collected $90 each month when that amount was available, even while there was left over for respondent little or nothing. Those book arrears therefore reflect a period when respondent had no other earnings and so no ability to contribute support; accordingly, they are hereby cancelled pursuant to subdivision (10) of section 92 of the Domestic Relations Court Act.

For completeness of discussion this memorandum will now comment on the rights and duties of the parties concerning " Roberta ". Unhappily, she has been deprived of a normal home and become a pawn in the hateful battle between her parents. The consequent damage is now largely irremediable. At the very least, however, petitioner should take affirmative steps to re-establish communication between respondent and the child, and in good faith carry out the recent assurances to that

effect made by petitioner's brother in her behalf. If that is done, it seems probable that respondent would from time to time make voluntary payments to "Roberta" or for her use within the limits of any increased financial capacity or send food to her, when and if furnished her address. For, from the voluminous record I gather the distinct impression that respondent has affection for his daughter, howsoever thwarted, and recognizes the following well-established principles: "it is not the policy of the law to deprive children of their rights on account of the dissensions of their parents for causes of which they are innocent and by proceedings to which they are not parties. The legal and natural duty of the father to support his children is not to be evaded by him * * * on the ground of any dissensions whatsoever with his wife. A natural father would not think of doing so, and an unnatural one should not be permitted to do so." (17 Am. Jur., Divorce and Separation, § 693, p. 529.)

"However, a failure of provision for the maintenance and support of minor children in the divorce decree does not absolve the father from the duty to provide for them, for, while the decree of divorce dissolves the marital relations of the parties, it did not divorce the father from his child or dissolve his liabilities to it." (9 Carmody on New York Pleading and Practice [2nd ed.], § 194, p. 293; citing *Laumeier* v. *Laumeier,* 237 N. Y. 357.)

Accord, *Anonymous* v. *Anonymous* (171 Misc. 644); *White* v. *White* (154 App. Div. 250); *Pretzinger* v. *Pretzinger* (45 Ohio St. 452); *Schacht* v. *Schacht* (187 Misc. 461).

In New York State the primary obligation for support of a minor child rests upon its father, regardless of the earnings or other resources of the mother (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460, *supra*). And the measure of such obligation is the child's needs in relation to the father's ability to provide and his station in life (see "*Johnston*" v. "*Johnston*", 177 Misc. 618, 623; *Prindle* v. *Dearborn,* 161 Misc. 95, 99; *Schacht* v. *Schacht,* 187 Misc. 461, *supra*; cf. *Garlock* v. *Garlock,* 279 N. Y. 337, 340).

The net of the mass of decisions dealing with a variety of particular circumstances has been tersely summarized thus: "The legal duty of a parent to support his minor children is affected by many considerations. His health, his means, his station in life, as well as similar considerations on the part of the child, have a bearing upon it. Although he is bound to furnish support while his legal obligation continues, if of

sufficient ability, it is the duty of the parent only to do the best he can to support his child in the manner suitable to his station and circumstances. The tests of the parent's ability to furnish adequate support are ordinarily comparative rather than absolute." (39 Am. Jur., Parent and Child, § 36.)

It is hoped that this detailed memorandum may be helpful in the plenary action litigation now pending in Colorado.

Notice shall be given to the parties pursuant to the subjoined direction.