" Martha  Everett ",  Petitioner,  v.  " Louis  Everett ",
Respondent.*

Domestic Relations Court of the City of New York, Family Court,
Queens County, December 19, 1949.

*Wm. J. Wilson* for petitioner.

*Martin E. Mandel* for respondent.

* The opinion as filed sets forth the true names of all parties but as here
published substitutes fictitious names and disguises certain other details, in
consonance with the spirit of section 52 of the Domestic Relations Court Act
of the City of New York (L. 1933, ch. 482).

SICHER, J. There is presented a distressing marital maladjustment which is not within the power of any court to cure and to which are relevant these words of Supreme Court Justice HOFSTADTER: " In deciding issues such as this, involving intimate personal relations, we dimly perceive other underlying impulsions, the vague shape of things unseen — imponderables — emerging from the vagaries of the mind and conditioned by the fallibilities of the human heart; beyond our capacity, as frequently beyond our competent province, to evaluate precisely and resolve completely." (*Treherne-Thomas* v. *Treherne-Thomas,* 178 Misc. 634, 637.)

" Ulen * * * wished there were some machinery by which he could try the issue of a child's right to its parents on an equal basis with the parents' absorption in their own differences * * *. He tried his hand at reconciling such couples but was not very successful, and he once reflected ruefully * * * that Nature could have done better by the race if all women were seventy years old when born and grew younger until they died at zero. They could hold their men better, and vice versa, * * * " (" Backbone of the Herring ", Judge Curtis Bok, page 167).

The parties were duly married in a Roman Catholic Church on December 19, 1934, and are the parents of three children (" Joan ", born February 8, 1941; " Chester ", born January 29, 1945; and " James ", born July 30, 1946).

But they ceased marital relations upwards of a year and a half ago; since May 3, 1949, respondent has been living outside of the suburban one-family house acquired by them jointly, and he has been pressing petitioner to divorce him.

After such departure respondent at first contributed to the wife and children only $70 semimonthly, and a reduction of even that insufficient amount in October, 1949, led to the commencement of this support proceeding.

Concededly, the wife and children are entitled to support according to respondent's means, i.e., under subdivisions 1 and 3 of section 92 and subdivision 1 of section 101. of the Domestic Relations Court Act of the City of New York. The sole controverted issue is the amount of the " fair and reasonable sum according to his means " (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1) which respondent " may be required to pay for their support " (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1), " as justice requires having due regard to the circumstances of the respective parties " (N. Y. City. Dom. Rel. Ct. Act, § 92, subd. 1).

Petitioner asks at least $90 semimonthly; · and respondent offers only $70, claiming that he cannot maintain himself on less than $88 semimonthly while his wife and three children must struggle along on $70 semimonthly plus such small and uncertain sums as petitioner might be able to earn from handwork and taking in lodgers.

Unhappily, there exists no magic process for transmutation of income none too ample for a united family, accustomed to comfortable living standards, into adequacy of separate maintenance of a divided family; so that necessarily there are daily entered in this court orders insufficient for dependents because of the inability of the respondent to meet an adequate order. (See *Domb* v. *Domb,* 176 Misc. 409, 410–411, PANKEN, J.) One of the untoward consequences of marital conflict is usually economic hardship for each spouse and the children.

Respondent is a police department of the city of New York patrolman at a present *net* compensation of $158 semimonthly (i.e. after deduction of reserve for pension).

He lists the following yearly personal expenses as allegedly necessary and proper in the computation of the aforementioned '' fair and reasonable sum '':

| | |
|---|---:|
| Room Rent | $724.00 |
| Insurance | 64.08 |
| Food | 730.00 |
| Car Insurance | 58.30 |
| Dental Bill | 50.00 |
| Laundry | 104.00 |
| Tailoring | 100.00 |
| Police Dues | 19.20 |
| Bootblack | 12.00 |
| PBA Dues | 12.00 |
| Operation of Automobile | 216.15 |
| Clothing | 60.00 |
| Barber | 15.00 |
| Miscellaneous | 24.00 |

$2,179.73 a year, i.e.
$181 a month.

Petitioner, in turn, lists the following as the minimum requirements of herself and the three children, predicated on their continued occupancy of the parties' one-family house:

*Living Quarters*

| | |
|---|---|
| Interest and Amortization ......... | $194.00 |
| Taxes ........................... | 138.00 |
| Coal ............................ | 150.00 |
| Utilities ........................ | 120.00 |
| Insurance ....................... | 23.50 |

$636.38 a year

or $53 a month (without any provision for repairs or other emergencies, except to the extent of $6 a month income from rental of garage).

*Other Monthly Living Expenses*

| | |
|---|---|
| Food ........................... | $83.00 |
| Clothing ....................... | 10.00 |
| Dental Bills .................... | 4.00 |
| Doctor Bills ... ................ | 5.00 |
| Insurance ...................... | 4.00 |
| Drugs .......................... | 1.00 |
| Music Lessons for Children....... | 6.00 |

$113.00

Add above item of .............. 53.00    (substitute for rent)

Total ........................ $166.00 per month.

The only one of petitioner's items which seems debatable and which might have to be sacrificed is $6 a month for music lessons for the children, resulting in a minimum figure of $160 per month.

In respondent's list the items of $58.30 for car insurance and $216.15 for operation of automobile are not persuasive. Primarily they represent a luxury, which must yield to the needs of his children; although doubtless a convenience to respondent in going to and from work, that car is not required or furnished for the performance of his police duties but is a personal pleasure vehicle.

It is ardently argued in respondent's behalf that the order for respondent's contributions towards support of his discarded wife and three young children should be in an amount less than their above-enumerated minimum requirements because he will permit them to continue to reside in the one-family house

acquired by both spouses in happier days as tenants by the entirety. It is suggested that he merits an accolade for not insisting on partition of those premises and allocation of petitioner's one-half share of the net proceeds of sale — a capital sum — to the current maintenance of the wife and children — an obligation properly dischargeable out of income.

That argument overlooks, or minimizes, that the carrying charges are little, if any, more, and perhaps less, than the rental of decent leased quarters for a family of four, if procurable; that the equity will be preserved, and, by amortization, increased, for the ultimate benefit of both co-owners; and that the situation which calls for an order of this court is one created by respondent, not petitioner.

Similar considerations rebut respondent's companion argument that the support order should be computed on the assumption that petitioner ought, and can, augment the payments from respondent by taking into the home one or more lodgers. Wholly unconvincing is the plea that respondent " should at least be permitted to retain from his earnings the sum of $41 a week " by dint of the wife and children making the further sacrifice of aggravating the handicaps of a broken home by impairing its privacy with the presence of paying strangers. In respondent's counsel's own words, it " is of extreme importance " that the parties be allowed " to exist with some semblance of dignity" and " the petitioner is a cultured and learned woman who comes from a well to do family * * *."

One other phase calls for comment, namely: the report to me, from the court staff, that respondent had remarked when informed of the method of payment of the temporary order that he would throw up his job if the final order amount would seem to him excessive.

Presumably, any such expression was an impulsive outburst which, on reflection, respondent will realize as unconsidered folly. A respondent cannot evade his support obligations by voluntarily relinquishing a job; as I had occasion to observe previously (*Anonymous* v. *Anonymous,* 22 N. Y. S. 2d 432, 438–439):

" For, the statute, Domestic Relations Court Act, § 101, conditions a wife's support not merely on possession of sufficient means but also on ability to earn such means. And that alternative provision is declaratory of a settled doctrine of the common law that ' the husband's faculties ' (the Ecclesiastical Court term for ' the source of support for alimony ') ' are his capabilities of maintaining a family, ordinarily consisting of his income

from whatever source derived. But if he refuses to acquire income, the sum which he might obtain by due exertion is also to be estimated as faculties.' Bishop, New Commentaries on Marriage, Divorce and Separation, Vol. II, § 890. ' Plainly, the husband's ability is the measure of his duty; so that, if he exerts himself, his actual earnings become faculties for alimony or, if he will not exert himself, his capacity for earning must be estimated.' Bishop, supra, § 892.

" Thus, in Kramer v. Kramer, 248 App. Div. 781, 289 N. Y. S. 49, the Appellate Division, Second Department, reversing Special Term, held a defendant guilty of contempt for failure to pay alimony in a separation action upon a showing that he had accepted employment at an annual salary of only $1,080 in disregard of his duty to provide for his wife and children and the fact that he was ' a dentist by profession, and naturally would have greater earnings in his profession if he were inclined to work.' Kramer v. Kramer, supra, 248 App. Div. 781, 289 N. Y. S. 49, 51.''

If respondent quit his position he could still be placed under a potential earning capacity order based on the amount of compensation which he voluntarily gave up; and his pension reserve could be impounded under subdivision 2 of section 132 of the Domestic Relations Court Act. Besides, there would be the harm to respondent personally from abandonment of a career in which there are prospects of promotion.

For the foregoing reasons the court finds that the petitioner and the children are entitled to support from respondent according to respondent's means; that respondent is chargeable with support as alleged in the petition; and that he is therefore hereby ordered and directed to pay into this court the sum of $80 semimonthly, each and every semi-month, beginning on January 3, 1950, for the support of petitioner and the children " Joan ", " Chester " and " James ", until further order of the court; and also forthwith the temporary order installment of $85 due December 17, 1949, if not already remitted.

The amount hereby ordered for support is based on separate maintenance of petitioner and those other dependents.

Finally, it is a self-evident commonplace that a broken home usually has adverse effects upon young children and that such harm is aggravated by attempts of the parents to use them as pawns in the marital conflict. It is therefore earnestly urged that the parties minimize the danger to their three young children by petitioner's vouchsafing to respondent full and free opportunity to develop their affection and respect, and that the

parties make reasonable voluntary arrangements as to the times, places, and other details of visitation. It is assumed that both parties have affection for those children and, being intelligent, may be persuaded by this exhortation. If, nevertheless, they fail to agree upon and carry out a mutually satisfactory visitation plan, at the request of either party any controversy concerning visitation may be scheduled for hearing before the justice then presiding at the Queens County Family Court.

Notice shall be given to the parties pursuant to the subjoined direction.