" DORA KRAKOW ", Petitioner, *v.* " PETER KRAKOW ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, November 21, 1950.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd. by L. 1942, ch. 761).

*John P. McGrath, Corporation Counsel* (*Mathilda Miller* of counsel), for petitioner.

*David B. Friedland* for respondent.

SICHER, J. The parties intermarried in New York City on August 9, 1924; of that union was born one child, a daughter, who is now a college graduate, married, and residing with petitioner on a Connecticut farm.

That was petitioner's second marriage, respondent's first. She was a widow, and, by her first husband, the mother of two daughters, each of whom is married and not now living with petitioner.

The parties have been separated continuously since August, 1940, when respondent moved to New York City away from the farm in Connecticut where petitioner still resides.

The legal title to that farm is in respondent's name, and he has been paying the taxes (which are nominal) notwithstanding that petitioner has filed attachments to compel a conveyance to **her.**

The controversy between them, which includes the issue of ownership of the farm — a matter, however, not within the jurisdiction of this court — first came to the Queens County Family Court's attention in May, 1947.

After a contested hearing there, upon a petition of the wife asking an order of support for herself, Justice DELANY ruled: " Petitioner is a resident of Connecticut living in the farm house in which she, respondent and their family lived prior to the time he left them to seek employment in New York City rather than to farm in Connecticut. Respondent has been working rather regularly in New York City since he came here. It is conceded that he sends no money to petitioner. It is also conceded that respondent pays regularly the tuition and board of their child who is in college — a sum that is in excess of the amount his meager earnings will permit — except at great sacrifice to his personal needs. The question of respondent's

liability for support of petitioner is — to say the least — a close question — which, because the Court believes the testimony of respondent to be truthful — would have to be decided in his favor if it were necessary to decide this issue at this time. For the purpose of this proceeding it is not necessary to decide respondent's liability for support of petitioner on a means basis, because respondent does not earn sufficient money to contribute both to his daughter's college education and to petitioner. She seems willing to permit him to continue contributing to their child's education and shows no present need for support for herself. In view of these facts the ends of justice will best be served by permitting respondent to continue to pay voluntarily the tuition of their child who is in college and to reserve the case generally — without prejudice to petitioner — upon change of circumstances — to renew her application — and it is so ordered. Notify parties and attorneys."

The proceeding was reopened in August, 1950, transferred from the Queens County Family Court to the New York County Family Court, and eventuated there in a September 8, 1950, order for petitioner in the sum of $15, Justice KAPLAN indorsing on the petition that day: " Petitioner and respondent. Respondent waives counsel. Order on a means basis for petitioner only, $15 per week, based on earnings of $68 per week. Respondent has two jobs and at first lied to the Court as to his income. He finally admitted he earns $68 on the two jobs. Order to begin 9/15/50."

These two jobs were as a porter for two employers, X Hotel, from 8:00 A.M. to 5:00 P.M., at a gross wage of $39 per week, and Y Maintenance Company, from 5:30 P.M. to 12:30 A.M., at a gross of $40 a week and a net of $37.16.

Respondent voluntarily gave up the X Hotel job on September 9, 1950; and on September 15, 1950, his attorney requested in his behalf a modification of said $15 weekly order on the ground that respondent's sole future income would be from the Y Maintenance Company job.

Accordingly, a hearing was scheduled for September 28, 1950, before Justice FOGARTY but then adjourned to November 2, 1950, pending further probation bureau investigation of respondent's earnings.

At the conclusion of a hearing on that adjourned date decision was reserved by me pending a physical examination of respondent by Dr. Philip E. Henig, director of the medical

division laboratory of this court, upon the stipulation that his report might be considered with the same effect as if he had testified on the stand in accordance therewith.

At that hearing respondent had frankly conceded that he purposely quit the X Hotel job. His explanation was that he had been working from eight o'clock in the morning until after midnight to assist his daughter to finish her college education but now that such objective had been attained he was unwilling and unable, at the age of sixty-five years and with impaired health, to continue those excessive hours of work for the benefit of his estranged wife.

Ordinarily, a respondent will not be permitted to evade his support obligation by voluntarily relinquishing a job (see " *Everett* " v. " *Everett* ", 197 Misc. 515, and cases cited at pp. 519–520). As I had occasion to observe previously (in *Anonymous* v. *Anonymous,* 22 N. Y. S. 2d 432, 438): " For, the statute, Domestic Relations Court Act, § 101, conditions a wife's support not merely on possession of sufficient means but also on ability to earn such means. And that alternative provision is declaratory of a settled doctrine of the common law that ' the husband's faculties ' (the Ecclesiastical Court term for ' the source of support for alimony ') ' are his capabilities of maintaining a family, ordinarily consisting of his income from whatever source derived. But if he refuses to acquire income, the sum which he might obtain by due exertion is also to be estimated as faculties.' Bishop, New Commentaries on Marriage, Divorce and Separation, Vol. II, § 890. ' Plainly, the husband's ability is the measure of his duty; so that, if he exerts himself, his actual earnings become faculties for alimony or, if he will not exert himself, his capacity for earning must be estimated.' Bishop, *supra,* § 892."

On the other hand, it is also established law that a husband's duty of support " is to be measured with reference to his pecuniary ability, honestly exercised, or his pecuniary resources " (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460, 464.) And, as commented by me in " *Moses* " v. " *Moses* " (193 Misc. 890, 897): " The words just quoted were incorporated in an opinion of then Supreme Court Justice, now Surrogate COLLINS, denying a wife's motion for temporary alimony, in which opinion he made the following comment on the plaintiff wife's prayer for a *pendente lite* award for herself and children in the face of the

husband's pulmonary tuberculosis: ' This plight is most unfortunate, but the marital vows contain debits as well as credits — sickness and adversity as well as health and prosperity.' (*Stafford* v. *Stafford,* 53 N. Y. S. 2d 414, 415.) ' While it is true that cases have held that the law will not starve the wife and feed the husband, it is also true that the law will not starve the husband and feed the wife. Each case must be decided on the circumstances disclosed '. (*Weigold* v. *Weigold,* 236 App. Div. 126, 127.) ' It is quite conceivable that an order may be made for the support of dependents which is not adequate because of the inability of the person chargeable to meet an adequate order. The ability of the respondent, as well as the need of a dependent, may govern the amount of the order.' (*Domb* v. *Domb,* 176 Misc. 409, 410-411, PANKEN, J.)''

Dr. Henig's November 14, 1950, report states, in part: '' Peter Krakow '', age 65, complains of pain about perineal region and in legs. He says he is being treated for varicose veins and a large prostate which causes him to be constipated. He is working 6 days per week as a porter. Fifteen years ago, he suffered an amputation of the right thumb. * * * Diagnosis: 1) Hypertrophied prostate 2) hypertension, mild 3) Varicose veins, bilateral. Opinion: This man may continue at his work as a porter. He should be seen by a doctor approximately once a month but should have X-rays of the lower intestine.''

That written report Dr. Henig has supplemented with an oral statement that respondent's age and physical condition not only justify but require, as a matter of ordinary prudence, he no longer undertake such excessive hours of work and that a single job is as much as he may reasonably be expected to carry.

Respondent was not wholly convincing as to the source of his wedding gifts of cash and an automobile to the daughter; it is doubtful that he has used up his earnings from the two jobs and is without at least some residue of cash accumulated since the daughter's graduation. But he denies the existence of any such cash reserve or bank account, and there is no affirmative evidence to the contrary.

Under all the circumstances I have concluded that respondent is entitled to modification of the $15 a week order *nunc pro tunc,* and that the maximum he may be fairly required to contribute

to petitioner at this time is the sum of $5 a week — the amount which he offered at the August 11, 1950, probation bureau intake interview and which his counsel now again offers in his behalf. The order is therefore so modified, and he is hereby ordered to deposit in this court, until further order, the sum of $5 a week, beginning November 24, 1950, plus $1 a week, beginning December 1, 1950, on arrears hereby adjusted at $40 (i. e., by reducing the eight weeks' book arrears of $120, computed at the rate of $15 a week, to $40, computed at the rate of $5 a week).

Today's order is based on weekly net earnings of $37.16 and an assumed absence of other resources, and it takes into account that respondent will have medical expenses for treatment of the conditions described in Dr. Henig's report.

As above stated, the controversy over the legal title to the Connecticut farm is not within the jurisdiction of this court. However, it is suggested, and urged, that for the benefit of both parties and the daughter there be effected an out-of-court-adjustment of that phase, lest the title become unmarketable and the property therefore eventually be lost to all three.

Notice shall be given pursuant to the subjoined direction.